Opinion
 

 EVANS, J.
 

 In a petition for writ of mandate, the individual plaintiffs sought to restrain Kenneth Cory, as State Controller, from terminating their terms of office as inheritance tax referees. Cory appeals from a summary judgment in favor of each of the individual plaintiffs.
 

 Plaintiffs Hoek, Gerard, O’Connor, Sheppard, Abel, Frost, and Bletcher were appointed to their positions by former State Controller Houston Flournoy for four-year terms pursuant to Revenue and Taxation Code section 14771; their counties of jurisdiction and the expiration date of their terms of office are as follows:
 

 Dirk Hoek Vergil Gerard Richard O’Connor Marvin Sheppard Timothy Abel Matt Frost Robert Bletcher Stanislaus Fresno Orange Santa Clara Alameda Riverside Santa Barbara June 30, 1976 June 30, 1977 June 30, 1977 June 30, 1977 June 30, 1978 June 30, 1978 June 30, 1978
 

 In June 1975, Cory notified each plaintiff by letter that his position as inheritance tax referee was to terminate June 27, 1975. Cory informed plaintiffs that they were being removed from office pursuant to Revenue and Taxation Code section 14773. Shortly after delivery of the original termination notice, Carl D’Agostino, chief deputy controller, also advised each plaintiff by letter that the State Controller was exercising
 
 *593
 
 his right of removal pursuant to Revenue and Taxation Code section 14773; subdivision (b),
 
 [1]
 
 and that the termination should not be interpreted as a negative reflection upon his performance as an inheritance tax referee. Concurrently, Cory informed the various superior courts in the counties affected that the plaintiffs should not continue to function as inheritance tax referees on any pending probate matters.
 

 On September 19, 1975, plaintiffs filed a petition for writ of mandate in Sacramento County, and a temporary order was issued restraining Cory from removing them from office until a hearing upon an alternative writ of mandate was held. Subsequently the parties stipulated that the Controller would not attempt to remove the plaintiffs until the matter was finally resolved by the courts.
 

 In findings of fact and conclusions of law in support of its order granting plaintiffs’ motion for summary judgment, the trial court found that the removal of each plaintiff as an inheritance tax referee without cause or hearing was a violation of procedural due process and denied him equal protection of the law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)
 

 I
 

 Procedural Due Process
 

 Article 3 of part 8, chapter 13, of the Revenue and Taxation Code was amended in 1970 and established, for the first time in California, qualification standards for inheritance tax referees. Section 14771
 
 [2]
 
 requires that the Controller appoint from among persons passing a qualification examination at least one person in each county as an inheritance tax referee “on the basis of merit without regard to sex, race, ... or political affiliation.” The section also fixes the term for each referee at four years.
 

 
 *594
 
 Section 14773 establishes the available bases for removal of referees. It provides, “(a) An inheritance tax referee may be removed for noncompliance with any standard of training, performance or ethics established under Section 14772.
 

 “Any removal under this subdivision shall not be subject to notice or a hearing, but shall be reviewable by writ of mandate to a court of competent jurisdiction.
 

 “(b) Notwithstanding the provisions of subdivision (a) or Section 14771, within any one year, the Controller may also remove, at his pleasure, at least one inheritance tax referee, but not more than 10 percent of the inheritance tax referees in any one county.”
 

 Plaintiffs argue that their summary removal without notice and hearing was a violation of their constitutional right to procedural due process; they contend that the statutory purpose, as disclosed in Revenue and Taxation Code section 14771, establishes a pure merit system for appointment and regulation of inheritance tax referees and their removal may only be for cause determined after notice and hearing. Such an argument is only partially valid.
 

 Section 14771 does indeed establish qualification standards and requires the hiring of referees on the basis of merit and for a stated term. The State Personnel Board is given the obligation of establishing criteria for examination, and the conduct of examinations as may be necessary to determine those qualified for appointment by the Controller. However, that section, insofar as it seems to establish at least a quasi-merit system, is tempered by the provisions of section 14773, subdivision (b). The Controller is expressly granted the right to remove “at his pleasure” at least one referee in each county but not more than 10 percent of the referees in any one county. That section gives the Controller the absolute right to remove at least one referee in each county as he may choose without reason or cause.
 

 It is upon this statutory and factual foundation that plaintiffs seek to erect their constitutional due process argument.
 

 Procedural due process requires that before an individual is deprived of property or his life and liberty, he must be given notice and a hearing in order to determine the propriety of the deprivation upon consideration of elements of fundamental fairness and justice.
 
 (Gray
 
 v.
 
 Whitmore
 
 (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].)
 

 
 *595
 
 However, it is settled that a public officer or employee serving at the pleasure of the appointing authority may be removed without cause or notice of hearing; but such employee may not be dismissed as a result of the exercise of a constitutional right vested under the First and Fourteenth Amendments to the Constitution.
 
 (Bogacki
 
 v.
 
 Board of Supervisors
 
 (1971) 5 Cal.3d 771, 778-779 [97 Cal.Rptr. 657, 489 P.2d 537].) In the latter case, the burden is cast upon the employee factually to establish that his dismissal was the result of the exercise of a constitutional right in defiance of a restriction placed by his employer. Such contention has not here been made.
 

 Plaintiffs do argue that they possess a property right in their continued employment by reason of their examination, qualification, and appointment to a fixed term of office. An examination of the provisions of the Revenue and Taxation Code dealing with inheritance tax referees, and particularly sections 14771 and 14773, refutes their argument. Section 14771 does require inheritance tax referee appointments to be for four-year terms of office, subject to the limitation of that term as specified in section 14773, subdivision (b). Each referee appointed is made aware of this fact by the terms of his certificate of appointment. Although section 14771 does not indicate a possibility that the term of office may be for less than four years, section 14773, subdivision (b), does expressly provide for that possibility in the case of at least one inheritance tax referee within each county and up to 10 percent of the inheritance tax referees in any one county annually. The total statutory intent relating to inheritance tax referees reveals a legislative purpose that in the manner limited by section 14773, subdivision (b), inheritance tax referees serve at the pleasure of the State Controller. The two sections, 14771 and 14773, are not in conflict. Section 14771 establishes standards for the appointment of qualified persons while section 14773 deals with removal of referees, and vests in the Controller power to remove annually a limited number of referees at his pleasure. Although the number of inheritance tax referees that may be removed is limited, all referees are subject to the Controller’s peremptory right of removal.
 

 Our conclusion that a due process violation is not involved is buttressed by a review of the history of the legislation contained in the report of the Assembly Interim Committee on Ways and Means dated March 8, 1965. It reveals an unsuccessful attempt to place inheritance tax referees within the state civil service system. Article 3 of part 8, chapter 13, as adopted in 1970, was an obvious compromise which did not totally eliminate prior provisions of the Revenue and Taxation Code which provided that inheritance tax referees served at the pleasure of the
 
 *596
 
 Controller. By the 1970 amendments, the Legislature attempted to minimize the effect of the patronage system by insuring that only qualified individuals would be available for appointment as inheritance tax referees by the Controller, while permitting him a limited discretion and power in the removal of those acting in that capacity. The trial court’s finding that plaintiffs were denied an express property interest and right as a result of their removal, is without statutory or factual support.
 

 Plaintiffs also argue that even in the absence of an express interest, property interests have been judicially recognized in the form of an expectancy of continued employment.
 
 (Perry
 
 v.
 
 Sindermann
 
 (1972) 408 U.S. 593, 599-601 [33 L.Ed.2d 570, 578-579, 92 S.Ct. 2694];
 
 Zumwalt
 
 v.
 
 Trustees of Cal. State Colleges
 
 (1973) 33 Cal.App.3d 665 [109 Cal.Rptr. 344];
 
 Balen
 
 v.
 
 Peralta Junior College Dist.
 
 (1974) 11 Cal.3d 821, 827 [114 Cal.Rptr. 589, 523 P.2d 629].) Such an expectancy must be more than a mere abstract need or unilateral expectation. There must be a legitimate claim of entitlement to continued employment.
 
 (Board of Regents
 
 v.
 
 Roth
 
 (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 560, 92 S.Ct. 2701].)
 

 Those cases relied upon by plaintiffs in which an expectation of continued retention of government benefits or employment were found are clearly distinguishable from the present circumstances. Each case involved an interaction between the parties exemplified by continued renewal of limited term contracts which would reasonably justify the expectation of a continued benefit or employment. (See
 
 Perry
 
 v.
 
 Sindermann, supra,
 
 408 U.S. at pp. 599-601 [33 L.Ed.2d at pp. 578-579];
 
 Balen
 
 v.
 
 Peralta Junior College Dist., supra,
 
 11 Cal.3d at p. 827;
 
 Zumwalt
 
 v.
 
 Trustees of Cal. State Colleges, supra,
 
 33 Cal.App.3d at p. 671.) Plaintiffs do not present any evidence that they were assured continued employment or retention for their full term, nor was it shown that the provisions of section 14773, subdivision (b), would not be utilized by the Controller.
 

 Cory’s action was consonant with the express legislative purpose, and did not deny plaintiffs their right to procedural due process.
 

 II
 

 Equal Protection
 

 Plaintiffs argue that section 14773, subdivision (b), providing that the Controller may remove at his pleasure at least one inheritance
 
 *597
 
 tax referee but not more than 10 percent in any one county, violates equal protection as provided by California Constitution, article I, section 7. In support of their argument, plaintiffs contend that the statute creates a class of inheritance tax referees in the larger counties exempt from removal while all referees in the small counties are subject to removal.
 

 Although the California Constitution does not speak in express terms of “equal protection,” it does contain provisions requiring the uniform operation of laws and a prohibition against special legislation. (Cal. Const., art. I, § 7.) These provisions are substantially equivalent to the equal protection of the laws as prescribed by the Fourteenth Amendment of the Constitution of the United States
 
 (Gray
 
 v.
 
 Whitmore, supra,
 
 17 Cal.App.3d 1;
 
 Russell
 
 v.
 
 Carleson
 
 (1973) 36 Cal.App.3d 334, 342 [111 Cal.Rptr. 497]) which compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.
 

 The equal protection clause does not require absolute or perfect equality; likewise it does not direct that statutes necessarily apply equally to all persons and permits the creation of differences so long as those differences do not amount to an invidious discrimination.
 
 (Purdy & Fitzpatrick
 
 v.
 
 State of California
 
 (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194];
 
 In re Antazo
 
 (1970) 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999];
 
 Douglas
 
 v.
 
 California
 
 (1963) 372 U.S. 353, 356 [9 L.Ed.2d 811, 814, 83 S.Ct. 814];
 
 Rinaldi
 
 v.
 
 Yeager
 
 (1966) 384 U.S. 305, 309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497].) Moreover, states may constitutionally create legislation that varies in effect between regions within the state inasmuch as equal protection relates to equality between persons rather than areas.
 
 (Salsburg
 
 v.
 
 Maryland
 
 (1954) 346 U.S. 545, 551 [98 L.Ed. 281, 288, 74 S.Ct. 280];
 
 Department of Motor Vehicles
 
 v.
 
 Superior Court
 
 (1976) 58 Cal.App.3d 936, 942 [130 Cal.Rptr. 311].)
 

 The premise extended by plaintiffs that “90 per cent of the Referees [in the larger counties] are immune from caprice discharge, while in the smaller counties, with less than ten Referees, more than 10 per cent . . . and as many as 100 per cent . . . are subject to such uncontrolled, discretionary removal” is irrelevant.
 

 Section 14773, subdivision (b), does not create a suspect classification. The section limits the number of referees that may be removed in any one county. Although the probability of removal will mathematically vary from county to county because of the different number of referees within each county, each referee, irrespective of county or number of
 
 *598
 
 referees within that county, is nonetheless subject to possible removal at the pleasure of the Controller. The statute does not create a class of referees in the larger counties that are immune from the possibility of removal. (See
 
 County of Los Angeles
 
 v.
 
 Legg
 
 (1936) 5 Cal.2d 349, 353 [55 P.2d 206];
 
 San Francisco Unified School Dist.
 
 v.
 
 Johnson
 
 (1971) 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669].)
 

 In
 
 Salsburg
 
 v.
 
 Maryland, supra,
 
 346 U.S. 545, the court at page 553 [98 L.Ed. 281, at page 289], noted “. . . that, in matters related to concentrations of population, the state government might well find reason to prescribe, at least on an experimental basis, substantive restrictions and variations in procedure that would differ from those elsewhere in the State.” Consequently, any removal of inheritance tax referees that results in a mathematical variation among counties pursuant to section 14773, subdivision (b), does not constitute a violation of equal protection. (See
 
 People
 
 v.
 
 Superior Court
 
 (1972) 29 Cal.App.3d 397, 400-401 [105 Cal.Rptr. 695];
 
 People
 
 v.
 
 McNaught
 
 (1973) 31 Cal.App.3d 599 [107 Cal.Rptr. 566].)
 

 The finding of the trial court that the statutory scheme creates an equal protection violation is not supported either in the law or the record.
 

 The judgment is reversed.
 

 Puglia, P. J., and Friedman, J., concurred.
 

 A petition for a rehearing was denied July 26, 1977, and respondents’ petition for a hearing by the Supreme Court was denied September 8, 1977. Newman, J., was of the opinion that the petition should be granted.
 

 [1]
 

 Revenue and Taxation Code section 14773, subdivision (b), provides in pertinent part: “ . . . within any one year, the Controller may also remove, at his pleasure, at least one inheritance tax referee, but not more than 10 percent of the inheritance tax referees in any one county.”
 

 [2]
 

 Former Revenue and Taxation Code section 14771 provided that all referees served at the pleasure of the Controller. It stated, “The Controller shall appoint at least one person in each county to act as an inheritance tax appraiser for the county, and may remove any such person at his pleasure.”