[S.F. No. 23937. July 27, 1979.]

HAL R. MILLER, JR., Plaintiff and Appellant, v.
CHICO UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION,
Defendant and Respondent.

COUNSEL

Marsh, Mastagni & Marsh, Harry M. Marsh and Maureen C. Whelan for Plaintiff and Appellant.

Maurice J. Nelson, James G. Seely, Madalyn J. Frazzini, Charles L. Moorrone, Mary H. Mocine, David B. Palley, Jacobs, Blanckenburg, May & Colvin, Reynold H. Colvin, Robert D. Links, Horace Wheatley, Penn Foote and John S. Muir as Amici Curiae on behalf of Plaintiff and Appellant.

Daniel V. Blackstock, County Counsel, and Marianne Heenan, Deputy County Counsel, for Defendant and Respondent.

W. Craig Biddle, Robert G. Walters, John L. Bukey and Biddle, Walters & Bukey as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**TOBRINER, J.**—On February 27, 1976, defendant Chico Unified School District Board of Education, notified plaintiff Hal R. Miller, Jr., principal of Bidwell Junior High School, of his reassignment to a teaching position for the following school year. Plaintiff has instituted the present mandamus proceeding, seeking reinstatement to his post as principal on the ground that the school board's action fails because it does not comply with sections 44031 and 44664 of the Education Code. (Former §§ 13001.5, 13489.)[1]

Under section 44031, school district employees must be given notice of, and opportunity to comment upon, derogatory information in their personnel files "which may serve as a basis for affecting the status of their employment." Section 44664 provides a method for frequent "evaluation and assessment" of certificated employees, and mandates the "employing authority" to notify an employee in writing in the event of the employee's unsatisfactory performance. The trial court below found that the school board had not met the requirements of sections 44031 and 44664 before reassigning plaintiff. Nevertheless, the court held that compliance with either provision "is not a prerequisite to reassignment of a principal to a

---

[1]Unless otherwise indicated, all statutory references are to the Education Code.

teaching position within a school district," and hence denied plaintiff's petition for mandate to compel his reinstatement.

We conclude that the trial court correctly rejected plaintiff's claim under section 44664, although, unlike the trial court, we reach that conclusion on the ground that the school board substantially fulfilled the evaluation and counseling requirements of that provision. We additionally hold, however, that the trial court erred in its treatment of plaintiff's contention under section 44031. As we explain, pursuant to that section a school administrator must be permitted to review and comment on derogatory written material compiled and maintained by a school district even though the material has not been properly placed in his personnel file. A school board cannot avoid the requirements of section 44031 by putting derogatory written material in another file not designated "personnel file" and by such a process of labelling prevent the administrator from reviewing and commenting upon allegations directed against him.

Moreover, in order to enforce the mandate of section 44031, we construe the provision to prohibit a school board from basing any employment decision on its analysis of derogatory information *unless* the board has notified the employee of such derogatory information and has afforded him an opportunity to comment upon it. In the instant case, the school board apparently did improperly consider some such derogatory information in reaching its decision to reassign plaintiff. Because the trial court did not decide whether the improper material was a crucial element in the board's decision, we remand the case to the trial court for that determination.

1. *The underlying facts.*

Plaintiff has been an employee of defendant school board since 1948. In 1958, the school board promoted plaintiff to principal of Bidwell Junior High School. Plaintiff holds general elementary, general secondary, and general administrative credentials.

Pursuant to procedures that the school board adopted in 1973, administrators in the school district are "formally evaluated" annually; as the school board's published "Certified Evaluation Handbook" states, section 44664 prescribes "legal details" of the evaluation process. Associate Superintendent Don A. Cloud evaluated plaintiff in June 1973, and the school board entered the resulting uniformly favorable "certifi-

cated personnel evaluation report,"[2] signed by Cloud and by plaintiff, in plaintiff's personnel file.

During the following school year, the board solicited comments from the Bidwell staff regarding various aspects of Bidwell school management; the board placed a compilation of the mostly critical returns in plaintiff's personnel file.[3] In June, at the end of the 1973-1974 school year, the school board conducted plaintiff's second evaluation, and placed the report in plaintiff's personnel file. While including several suggestions for improvement on plaintiff's part, the report generally approved plaintiff's performance.[4]

In April 1975 the school board established a "Timetable for Evaluating Leadership Function at Bidwell Junior High School." The timetable, a copy of which was placed in plaintiff's personnel file, noted that the "Superintendent's recommendation for 1976/77 school year" would be submitted to the board by February 1976. An attached memorandum from Dr. Cloud to plaintiff described recent "concerns" focused on "the leadership that is being exercised at Bidwell," and enumerated various "major areas . . . which need to be improved."[5]

Plaintiff's most recent evaluation report, compiled in June 1975 for the 1974-1975 school year, noted "Hal's friendly and sincere attitude as he has worked with us through the years," but referred to specific criticisms previously documented to emphasize "that improvement is needed at the principalship level." During the first half of the 1975-1976 school year, plaintiff's supervisors frequently conferred with plaintiff and exchanged a

---

[2] Dr. Cloud's comments as evaluator include, inter alia: "I am aware of the favorable results of the . . . testing program. . . . I sense that at Bidwell School [the attitude that the school staff holds toward the students] is a positive force. . . . We appreciate your contribution to the Stull Team. . . . Good luck in your development of a more functional design [for support services]."

[3] Among the criticisms collected are: "Too much evaluation of minor physical details of the classroom rather than teaching effectiveness"; "Maybe too much time spent away from school on committees."

[4] The report notes: "We share your good feelings about the . . . test results. . . . We suggest: [¶] 1. that you personally become more involved in curriculum matters, . . . [¶] 2. Work with your leadership team and the staff to develop strategies for a better 2-way communications system. . . . We have appreciated your working with us this year."

[5] Dr. Cloud pointed out plaintiff's "Need to assist newer teachers in establishing a wholesome learning climate in the classroom"; "Need to provide inspired leadership that challenges people to do their best"; "Need to spend more time in the district rather than at outside conferences."

series of memoranda with him monitoring, among other things, plaintiff's direction of school curriculum, management of school budget, and selection of Bidwell staff.

On February 27, 1976, the school board notified plaintiff by letter of his reassignment to a teaching position to commence July 1, 1976.[6] The school board enclosed a copy of a December 23, 1975, memorandum from Dr. Cloud to Superintendent Robert J. Jeffries recommending plaintiff's reassignment, a statement of 14 reasons for the reassignment,[7] "together with an attachment which fully documents the reasons and is listed as Exhibit A." Plaintiff's current dispute with the school board centers on certain of the documents in exhibit A: although exhibit A contained plaintiff's past evaluation reports and other items culled from plaintiff's personnel file, it also disclosed to plaintiff for the first time 20 confidential memoranda by Dr. Cloud criticizing plaintiff's conduct as principal (the Cloud memoranda).

On March 1, 1976, the school board requested plaintiff's cooperation in his fourth annual Stull evaluation report, but plaintiff refused on advice of counsel. Plaintiff accepted the board's invitation, however, for a hearing "for the purpose of determining whether [plaintiff was] accorded due process. . . ." At the hearing on April 27, 1976, plaintiff and his attorney responded to the information contained in exhibit A. On May 20, 1976, the board unanimously decided that plaintiff had not been denied due process "by the manner in which [plaintiff] was notified of the Board's decision to reassign [him] from [his] present position as Principal of Bidwell Junior High School to a teaching position in the Chico Unified School District for the 1976-77 school year."

On June 18, 1976, plaintiff filed a petition for writ of mandate to compel the school board to rescind his reassignment. Plaintiff alleged that the board had violated section 44031 by failing to give him notice of the existence of the confidential memoranda contained in exhibit A, and by denying him an opportunity to review and comment upon that derogatory information. Plaintiff further claimed that the school board had disregarded the requirements of section 44664 by failing to notify him in

---

[6]According to plaintiff's declaration, the reassignment represents "a significant decrease in . . . compensation [and in] status of employment and job responsibilities."

[7]In the statement of reasons the superintendent asserts, for example, that "Mr. Miller has not, to the degree expected, worked to help the individual teacher improve his/her teaching skills"; "Mr. Miller has not, to the degree expected, dealt with discipline problems on a consistent, well-defined basis."

writing of any unsatisfactory performance on his part and by neglecting to assist his improvement before reassigning him. On these bases plaintiff sought immediate restoration to his post as principal.[8]

On June 23, 1976, the trial court issued an order to show cause and a temporary restraining order enjoining the school board from reassigning plaintiff. On July 7, 1976, the board demurred to plaintiff's petition; as an affirmative defense the board alleged that "reassignment of a principal to a classroom teaching position does not require compliance with either Education Code § [44031] or Education Code § [44664]." In any case, the board pointed out, it had not violated section 44031 inasmuch as the Cloud memoranda contained in exhibit A "are not in . . . plaintiff's file, and never were entered or placed in said file, and [¶] . . . describe counseling contacts made by Associate Superintendent Don Cloud, pursuant to directives issued by the Board of Education and the Superintendent of the Chico Unified School District. . . . [P]laintiff participated in each of said contacts and could have presented his own oral or written rebuttal to said attachments at any time after he received Exhibit 'A' on February 27, 1976." As for section 44664, the school board contended that it had met evaluation requirements for the 1972-1973, 1973-1974, and 1974-1975 school years; "[f]or the 1975-1976 school year, a Stull Act evaluation was not completed because . . . plaintiff refused to participate therein. . . ."

The trial court made detailed findings of fact to support its final judgment. The court found that a substantial portion of the material contained in exhibit A, including information of a derogatory nature, had not been placed in plaintiff's personnel file, nor had plaintiff been given notice or an opportunity to review or comment upon the material "prior to [its] being used by the District as a basis for affecting the status of [plaintiff's] employment in reassigning [plaintiff] from Principal to a teaching position." Plaintiff was thereby "deprived of his right, as to such documents, to enter and have attached to such derogat[or]y statements his own comments." Nor was plaintiff notified in writing that he was not performing his duties in a satisfactory manner: although the school board discussed plaintiff's 1975 evaluation report with plaintiff, "that document

---

[8]As a separate cause of action plaintiff alleged that the school board's failure to comply with the statutory requirements deprived him of "rights guaranteed to him as a citizen of the United States of America pursuant to Amendment IV of the United States Constitution and Amendment XIV of the United States Constitution." On June 27, 1977, plaintiff requested dismissal of this cause of action with prejudice; the trial court accordingly entered its dismissal the following day. Plaintiff has not appealed the trial court's dismissal.

did not state [plaintiff] was not performing his duties in a satisfactory manner."

While the trial court accordingly found that the board failed to comply with sections 44031 and 44664, the court concluded that compliance "is not a prerequisite to reassigning an administrator to a teaching position," dissolved the temporary restraining order, and ordered judgment for the board.

 2. *The school board's failure to enter the Cloud memoranda in plaintiff's personnel file prior to reassigning plaintiff to a teaching position violated plaintiff's rights under section 44031 to review and comment upon derogatory materials which might serve as a basis for affecting plaintiff's employment status. We remand the case to the trial court for a determination as to whether any such violation prejudiced plaintiff.*

The record reveals that in recommending plaintiff's reassignment to a teaching position, Associate Superintendent Cloud prepared some 20 confidential memoranda for the school board's use. According to the declaration of Dr. Cloud's secretary, "On or about December 23, 1975 Dr. Cloud dictated, from his personal notes and calendar, a summary of various meetings, contacts, occurrences, and events [which took place between March 7 and December 3, 1975,] involving Mr. Hal R. Miller, Jr. [¶] Immediately thereafter, I transcribed said summary on separate sheets of paper, with each sheet bearing the date on which the meeting, contact, occurrence or event took place; said sheets were numbered as Attachments 11 through 30. I then compiled said Attachments 11 through 30 into 'EXHIBIT A' together with Attachments 1 through 10." Attachments 1 through 10 comprised the documents already contained in plaintiff's personnel file; Dr. Cloud submitted these documents and his freshly transcribed memoranda to Superintendent Jeffries in support of the recommendation that plaintiff be reassigned. As the school board admits, the Cloud memoranda—attachments 11 through 30 of exhibit A—have never been entered in plaintiff's personnel file.

Substantial evidence supports the trial court's finding that the documents constituting attachments 11 through 30 contain information directly or implicitly derogatory of plaintiff. A memorandum dated November 6, 1975, for example, criticizes plaintiff's procedure for recommending substitute teachers; another expressed Dr. Cloud's "amazement" at plaintiff's "feeling that socio-economic status had very

little, if anything, to do with scores attained on standardized tests." The remaining memoranda reflect similar reservations about plaintiff's performance or repeat criticisms of plaintiff allegedly voiced by third parties.

Plaintiff contends that prior to February 27, 1976, when the board notified him of his reassignment, he was unaware of the "contents, existence, or substance" of these memoranda; because the board failed to allow him to comment upon these memoranda before deciding to reassign him, the board violated his rights under section 44031. Plaintiff asserts that if he had been afforded the opportunity to comment upon this material at the time it was compiled, Dr. Cloud "would not have been able to provide any reasons supporting [plaintiff's] reassignment, because the derogatory information contained in [the memoranda] could have been easily contradicted and/or explained."[9]

Section 44031 provides: "Materials in personnel files of employees which may serve as a basis for affecting the status of their employment are to be made available for the inspection of the person involved. . . . [¶] Every employee shall have the right to inspect such materials upon request, provided that the request is made at a time when such person is not actually required to render services to the employing district. [¶] Information of a derogatory nature . . . shall not be entered or filed unless and until the employee is given notice and an opportunity to review and comment thereon. An employee shall have the right to enter, and have attached to any such derogatory statement, his own comments thereon. Such review shall take place during normal business hours, and the employee shall be released from duty for this purpose without salary reduction."[10]

The school board unpersuasively asserts that section 44031 does not apply to the present case on the ground that none of the Cloud memoranda were ever "entered or filed" in plaintiff's personnel file. A

---

[9] Plaintiff properly does not contend that he is entitled to a due process hearing to contest his reassignment. (*Barthuli v. Board of Trustees* (1977) 19 Cal.3d 717 [139 Cal.Rptr. 627, 566 P.2d 261]; *Thompson v. Modesto City High School Dist.* (1977) 19 Cal.3d 620 [139 Cal.Rptr. 603, 566 P.2d 237].)

[10] Section 44031 excepts from the employee's right of inspection any "ratings, reports, or records which (1) were obtained prior to the employment of the person involved, (2) were prepared by identifiable examination committee members, or (3) were obtained in connection with a promotional examination." No such material is at issue in this case and nothing in this opinion is intended to suggest that a school board is precluded from relying upon such records in rendering employment decisions.

school district, however, may not avoid the requirements of the statute by maintaining a "personnel file" for certain documents relating to an employee, segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee's employment. Nor, as the present trial court pointed out, may the school district insulate itself by simply neglecting to file material which the statute contemplates will be brought to the employee's notice.

The Legislature enacted section 44031 in order to minimize the risk of employment decisions that were arbitrary or prejudicial, and to this end established a procedure whereby employees could correct or rebut incomplete or inaccurate information in the hands of their employers which might affect their employment status. The significance which the Legislature attached to adherence to the procedure is reflected in the provision allowing employees to review their files during normal business hours without reduction in salary.

A school employee's personnel file serves as a permanent record of his employment; derogatory information placed in that record may be used against the employee long after the informant becomes unavailable. Thus the statute provides the employee with the concurrent right to place on the record material in rebuttal. Unless the school district notifies the employee of such derogatory material within a reasonable time of ascertaining the material, so that the employee may gather pertinent information in his defense, the district may not fairly rely on the material in reaching any decision affecting the employee's employment status.[11]

Defendants have violated plaintiff's rights under section 44031 in precisely the described fashion. After becoming aware of some deficiencies in plaintiff's performance, Associate Superintendent Cloud began a program of frequent consultation with plaintiff directed toward a recommendation concerning plaintiff's continued employment for the 1976-1977 school year. Dr. Cloud kept notes incidental to his program of supervision and eventually transcribed these notes for presentation as formal support for his final recommendation of reassignment. As the trial court found, "The District had ample time to place each of the

---

[11] In requiring notification within a reasonable time we foresee that a school district may wish to weigh the accuracy, relevance, good faith, or usefulness of any information it receives before deciding to place the information in its employee's personnel file. Furthermore, we do not here interpret section 44031 as precluding a school district from investigating an employee's past conduct which for a legitimate reason may only lately have been uncovered.

Attachments 11 through 30 in [plaintiff's] personnel file sufficiently in advance of his notice of reassignment to afford [plaintiff] a reasonable opportunity to review and comment thereon prior to his notice of reassignment." Nevertheless, the board received Dr. Cloud's confidential memoranda without first allowing plaintiff the opportunity to correct any inaccurate derogatory information contained therein.[12]

Having concluded that the school board violated plaintiff's rights under section 44031, we must determine whether that violation warrants plaintiff's reinstatement to his post as principal. We have decided, because the present record is unclear, to remand the case to the trial court for a determination as to whether the board's action was prejudicial.

Declarations by individual members of the school board suggest that the board may have relied on the Cloud memoranda in reaching the decision to reassign plaintiff. As one member declared, "the materials in Exhibit 'A,' and the Superintendent's recommendation convinced me that the action of replacing [plaintiff] as principal was and is in the best interest of the Bidwell service area." At the same time, however, the members declare that the Cloud memoranda were not *necessary* to their decision, and that other adequate factors influenced the decision to demote plaintiff. Thus the same member of the board explained, "On April 27, 1976, Mr. Miller and Mr. Harry Marsh, his attorney, appeared before the Board. The offer of proof by Mr. Marsh in behalf of Mr. Miller did not carry sufficient evidence to indicate that a modification to any decision should be forthcoming. Mr. Marsh expressed concern about

---

[12]Plaintiff persuasively urges that affording him an opportunity to rebut would not have been a meaningless gesture. Plaintiff illustrates his contention by referring to attachment 18, a memorandum recording a conversation between plaintiff and Cloud concerning a parent's threats to a Bidwell staff member. According to Cloud's memorandum, "I [Cloud] asked Mr. Miller why he didn't apply Education Code Section 13560, which would have protected his instructor. Mr. Miller's reply to me was 'Would you like to do it?' "

In refutation of Cloud's implicit criticism, plaintiff points out that because the parent's threats were at best "nonimmediate" and "vague," application of section 13560 (now § 44812) under the circumstances would have been "on its face ridiculous." The statute provides criminal sanctions for a parent who "insults or abuses" a teacher in the presence of other school personnel. As plaintiff declares, "I did not invoke said section because I felt at the time, and still feel, that because said section provides for criminal penalties, it would have had a tremendously chilling effect on parents feeling free to discuss problems with school administrators. I felt then, and feel now, that to have invoked said section under such circumstances would have been a serious judgmental error and would have potentially exposed the District to unwarranted liability. Had I been aware of said derogatory memo at the time that it was compiled I would have written a complete and detailed response, along the lines of the foregoing, to the school district to be included with the derogatory memo."

items 11 through 30. . . . *My decision would have been the same had those particular attachments not been presented.*" (Italics added.)

Referring to this and other similar declarations the trial court below found, "with all due respect to the members of the School Board—these are self-serving statements after the fact, and do not meet the question as to whether [items 11 through 30 in exhibit A] were, in fact, considered before the decision to [reassign]." As we have explained heretofore in other contexts, however, the correct inquiry focuses not merely on whether the school board considered the Cloud memoranda in deciding to reassign plaintiff, but on whether *but for* the memoranda the board would not have reassigned him. (See *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 592-594 [100 Cal.Rptr. 16, 493 P.2d 480]; *Bonham* v. *McConnell* (1955) 45 Cal.2d 304 [288 P.2d 502]; see also *Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 283-287 [50 L.Ed.2d 471, 481-484, 97 S.Ct. 568]; *Byrd* v. *Savage* (1963) 219 Cal.App.2d 396 [32 Cal.Rptr. 881].) ██ Inasmuch as we cannot determine on the present record whether the board would have reached the same decision as to plaintiff's demotion even in the absence of the Cloud memoranda, we reverse the present judgment and remand the case for further proceedings.[13]

---

[13]The school board contends that plaintiff may not claim prejudice inasmuch as he "could have presented his own oral or written rebuttal to [the Cloud memoranda] at any time after he received Exhibit 'A' on February 27, 1976." The school board's contention assumes, first, that the notification on February 27 was timely. We cannot ignore the possibility, however, that the Cloud memoranda contained information so stale that plaintiff was effectively prevented from refuting any charges while particular incidents were still fresh in the minds of relevant witnesses.

Moreover, the school board's contention would be more persuasive had the school board's decision to reassign plaintiff been a preliminary, tentative one, such that notice of the derogatory information on February 27 would have afforded plaintiff a reasonable and realistic opportunity to present material in rebuttal. The record reveals, however, that Superintendent Jeffries recommended plaintiff's reassignment to the board on February 25, 1976, and that the board voted in executive session that day to adopt the superintendent's recommendation. The board's letter of February 27 informs plaintiff of the fait accompli of his change in status. Despite the fact that the board gratuitously offered plaintiff the opportunity of a hearing, the board limited the scope of the hearing to the "purpose of determining whether [plaintiff was] accorded due process in this matter." The board itself concedes that there was no "evidentiary hearing with witnesses called"; since the board appears to have precluded plaintiff from rebutting the merits of the Cloud memoranda, we reject the board's contention. (Cf. *Cole* v. *Los Angeles Community College Dist.* (1977) 68 Cal.App.3d 785, 794 [137 Cal.Rptr. 588], in which the court held that section 44031 does not apply to such "routine record, speaking for itself," as an employee's "time cards"; the court affirmed the trial court's finding that defendant's failure to include plaintiff's time cards in plaintiff's personnel file " 'did not prevent [plaintiff] from obtaining a fair hearing by the Personnel Commission of the charges against him.' ")

On remand, the trial court should determine whether absent the Cloud memoranda, the board would have reassigned plaintiff. If the court determines that the board would have reassigned plaintiff in any case, it should deny plaintiff's petition for reinstatement. If the court determines that the Cloud memoranda played a crucial role in the board's decision to reassign plaintiff, it should issue a writ of mandate requiring the board to reinstate plaintiff as principal, without prejudice to any future reassignment based on proper considerations. Finally, if the court cannot determine *whether or not* the Cloud memoranda played a crucial role in the board's decision of reassignment, the court should order the board to reconsider its decision of reassignment without reference to the Cloud memoranda.[14]

■ 3. *Defendant school board substantially complied with section 44664 before reassigning plaintiff to a teaching position.*

Plaintiff seeks reinstatement to his position as principal on a second ground: plaintiff alleges that the school board's failure to comply with the requirements of section 44664 invalidates his reassignment to a teaching post. Section 44664, a provision of the Stull Act (former §§ 13485-13490, now §§ 44660-44665), provides: "Evaluation and assessment of the performance of each certificated employee shall be made on a continuing basis, at least once each school year for probationary personnel, and at least every other year for personnel with permanent status. The evaluation shall include recommendations, if necessary, as to areas of improvement in the performance of the employee. In the event an employee is not performing his duties in a satisfactory manner according to the standards prescribed by the governing board, the employing authority shall notify the employee in writing of such fact and describe such unsatisfactory performance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of improvement in the employee's performance and endeavor to assist him in such performance."[15]

The trial court in the present case found that the school board violated section 44664 by neglecting to notify plaintiff in writing that he was not

[14]In light of this disposition we do not consider plaintiff's claim that defendants' actions in violation of section 44031 have deprived him of his common law right of fair procedure (*Ezekial* v. *Winkley* (1977) 20 Cal.3d 267 [142 Cal.Rptr. 418, 572 P.2d 32]) and of his constitutional right to privacy (Cal. Const., art. I, § 1).

[15]Section 44664 also allows school districts at their discretion to exclude hourly and temporary hourly certificated employees, and substitute teachers, from the provisions of the section.

performing his duties in a satisfactory manner, and by failing "thereafter [to] confer with [plaintiff]." The record indicates, however, that the school board substantially complied with the Stull Act's mandate that the board fix performance guidelines for its certificated personnel, evaluate plaintiff in light of such guidelines, inform plaintiff of the results of any evaluation, and suggest to plaintiff ways to improve his performance.

The school board's guidelines provide for annual evaluations of supervisory personnel; accordingly, the board evaluated plaintiff in 1973, 1974, and 1975. Although plaintiff received generally satisfactory evaluations in 1973 and 1974, the board's evaluation report in 1974 contains suggestions for specific areas of improvement. The board's establishment of a "timetable" in April 1975 for assessment of plaintiff's performance evidences an increased scrutiny of plaintiff that year; Associate Superintendent Cloud notified plaintiff at that point that plaintiff was the subject of concern, and repeated suggestions for improvement.

Plaintiff's final Stull Act evaluation in June 1975 plainly notified plaintiff "in writing" of any unsatisfactory conduct on his part, and in addition provided a forum for plaintiff's supervisors to make "specific recommendations as to areas of improvement in the employee's performance and endeavor to assist him in such performance." Plaintiff's signature on the report indicates that he was informed of the results of this evaluation. Although the board scheduled an evaluation for the 1975-1976 school year, plaintiff refused to participate. Throughout the year, however, plaintiff's supervisors had contacted him frequently concerning his difficulties; after at least two meetings Associate Superintendent Cloud provided plaintiff with memoranda listing methods of improvement. Thus plaintiff knew of the board's close attention to his performance and of specific ways in which he could alleviate their concerns. Under these circumstances we reject the trial court's finding of noncompliance and its overly restrictive interpretation of the requirements of section 44664.[16]

---

[16]In view of our conclusion we do not reach plaintiff's contention that noncompliance with the terms of the Stull Act voids a school district's reassignment of an administrator. (But see *Grant* v. *Adams* (1977) 69 Cal.App.3d 127 [137 Cal.Rptr. 834]; *Anaclerio* v. *Skinner* (1976) 64 Cal.App.3d 194 [134 Cal.Rptr. 303]; *Vick* v. *Board of Education* (1976) 61 Cal.App.3d 657 [132 Cal.Rptr. 506].) We note, nonetheless, that the statute governing removal and transfer of administrators effective at the time of plaintiff's reassignment made no reference to Stull Act evaluations. (See § 44896, former § 13314.7.) A *subsequent* amendment mandates that an evaluation be completed "not more than 60 days prior to the giving of the notice of the transfer" in any case involving transfer for "incompetency." (Stats. 1977, ch. 973, § 1.) The Legislature has unsuccessfully attempted

This court is surely obligated to understand the purpose of sections 44031 and 44664 and to apply those sections to the relevant facts. ■ The obvious objective of the Legislature was to protect the individual employee, in this case, the principal of a high school, against arbitrary action by the institution, here the school board, in order to preserve the individual's rights against their improper severance. The individual would be helpless against the institution's wrongful reassigning him to an inferior position unless he had the opportunity to know, and if possible, to counter the reasons for it. At the same time if the trial court in the present case should find that the board in any event, even in the absence of unproven accusations against the principal's conduct, would still have reassigned him, for its own good reasons, the principal cannot justly complain.

The judgment is reversed and the cause is remanded to the trial court for further proceedings in conformity with this opinion.

Bird, C. J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—I dissent.

First, Education Code section 44031[1] applies only to materials placed in the personnel file—not to an unfiled superintendent's report. Second, even assuming the section is applicable to the superintendent's report, nothing in section 44031 mandates, or even suggests, the quasi-adversary

a further amendment to provide for the completion of a Stull Act evaluation "not more than 60 days and not less than 30 days prior to the giving of the notice" of transfer on any grounds. (Assem. Bill No. 2433 (1977-1978 Reg. Sess.) vetoed by the Governor on Aug. 25, 1978, 2 Assem. Final Hist. (1977-1978 Reg. Sess.) p. 1418.)

[1]Section 44031 provides: "Materials in personnel files of employees which may serve as a basis for affecting the status of their employment are to be made available for the inspection of the person involved. [¶] Such material is not to include ratings, reports or records which (1) were obtained prior to the employment of the person involved, (2) were prepared by identifiable examination committee members, or (3) were obtained in connection with a promotional examination. [¶] Every employee shall have the right to inspect such materials upon request, provided that the request is made at a time when such person is not actually required to render services to the employing district. [¶] Information of a derogatory nature, except material mentioned in the second paragraph of this section, shall not be entered or filed unless and until the employee is given notice and an opportunity to review and comment thereon. An employee shall have the right to enter, and have attached to any such derogatory statement, his own comments thereon. Such review shall take place during normal business hours, and the employee shall be released from duty for this purpose without salary reduction."

administrative transfer procedure established by the majority.[2] Section 44031 in the plainest terms deals with inspection of school employees' personnel files and rebuttal of derogatory information therein. It does not purport to govern administrative transfer proceedings or to establish evidentiary rules for the use of file information. Third, even assuming that the section is applicable to the superintendent's report and that the section establishes an evidentiary rule governing use of file information, applicable principles of judicial review require affirmance of the judgment denying mandate.

## I

Permitting rebuttal of personnel file information, section 44031 contains no language requiring the inclusion of any information in the file. Had the Legislature intended that certain information, derogatory or laudatory, was to be included in the files, the Legislature could have easily so provided. It did not. The section should accordingly be interpreted as applying only to information placed in the file. Such interpretation is reflected by the exceptions in the section. Those exceptions do not merely authorize withholding of information but prohibit inclusion of the excepted information.

The majority's construction of the section mandates a costly paperwork explosion, impairing the administration of our school system and education of our children. Construing the section as requiring inclusion in the file of all derogatory information "within a reasonable time of ascertaining the material" (see fn. 2), means that superintendents must prepare a written report of each meeting with an administrator and of each criticism or suggestion made so that the administrator may rebut the report before it is filed.[3] Superintendents also must record their critical observations of school programs, classroom visits, and public complaints they receive, for those also may influence a later demotion decision. Because the section also applies to teachers, the superintendent and the administrators must compile similar records for each teacher. The time

---

[2]"Unless the school district notifies the employee of such derogatory material within a reasonable time of ascertaining the material, so that the employee may gather pertinent information in his defense, the district may not fairly rely on the material in reaching any decision affecting the employee's employment status." (*Ante,* p. 713, fn. omitted.)

[3]At the time the information must be put in the file the superintendent and the administrators do not know whether it will become relevant at some later date. Because of this and because the district board is entitled to all available information in determining whether to order transfer, all potentially relevant information must be included in the dossier. The breadth of the paperwork explosion is apparent.

needed to satisfy this requirement represents an impossible burden for the superintendent, administrators, and teachers. Further, it becomes patently unreasonable in light of the fact that little of such material ever will be used. In these days of school district austerity, the paperwork explosion can only mean unjustified expense and impairment of administration and teaching in our schools.

In support of their statutory interpretation, the majority cite the need to prevent preservation of stale, unrebutted information in files. Yet, once filed pursuant to the majority rule, derogatory information becomes a permanent part of an administrator's file and may not be removed until the individual's retirement or termination. (58 Ops.Cal.Atty.Gen. 422, 424 (1975).) It thus encourages the career-long accumulation of all derogatory information written at any time about an individual. The purposelessness of this requirement is apparent, given the rarity with which such information actually will be used and the statutory restriction against using information relating to a matter more than four years old in a termination proceeding. (Ed. Code, § 44944, subd. (a).)

I would conclude that section 44031 does not require the inclusion of any material in the personnel file but provides only for rebuttal of material placed in the file.

II

The majority's construction of section 44031 in reality tends to convert it into a rule of evidence. Section 44031 merely provides for rebuttal of information in personnel files. However, providing that a demotion is invalidated by consideration of unanswered nonfile material—such as the instant internal memoranda—establishes an evidentiary requirement.

Such requirement is at odds with the long established rule that a school board possesses absolute discretion to return administrators to teaching positions for reasons the board deems sufficient. (*Board of Education* v. *Swan* (1953) 41 Cal.2d 546, 555-556 [261 P.2d 261]; *Grant* v. *Adams* (1977) 69 Cal.App.3d 127, 132, 137-138 [137 Cal.Rptr. 834]; *Anaclerio* v. *Skinner* (1976) 64 Cal.App.3d 194, 197 [134 Cal.Rptr. 303]; *Barton* v. *Governing Board* (1976) 60 Cal.App.3d 476, 479 [131 Cal.Rptr. 455]; *Hentschke* v. *Sink* (1973) 34 Cal.App.3d 19, 22-23 [109 Cal.Rptr. 549]; Note, *Due Process for Public School Administrators?* (1978) 9 Pacific L.J. 921, 933, 939; Reutter & Hamilton, The Law of Public Education (2d ed. 1976) at

p. 424; 78 C.J.S., Schools and School Districts, § 205, p. 1101; see *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717, 721 [139 Cal.Rptr. 627, 566 P.2d 261], cert. den., 434 U.S. 1040 [54 L.Ed.2d 790, 98 S.Ct. 21]; *Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 624 [139 Cal.Rptr. 603, 566 P.2d 237]; *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 781-783 [97 Cal.Rptr. 657, 489 P.2d 537]; *Holbrook* v. *Board of Education* (1951) 37 Cal.2d 316, 334 [231 P.2d 853]; *Griffin* v. *Los Angeles etc. Sch. Dist.* (1942) 53 Cal.App.2d 350, 352 [127 P.2d 939]; Piele, The Yearbook of School Law 1978 at pp. 77-79.) Only proper notice and, if requested, a statement of reasons are required. (Ed. Code, § 44896; *Barton* v. *Governing Board, supra,* 60 Cal.App.3d at p. 479.)

The reasons supporting this principle were stated in *Hentschke* v. *Sink, supra,* 34 Cal.App.3d 19: "[A] second or third level administrator bears to his superiors a relationship of the most intimate nature, requiring complete trust by the top administrators in the judgment and cooperative nature of the subordinate. The loss of that trust is not a matter susceptible of proof such as is involved in the cases where a classroom teacher is dismissed or demoted for objective acts of misconduct. To introduce into the administrative structure the elements of discharge for 'cause' and of formal hearing would be to make effective school administration impossible. The statutes do not require that." (34 Cal.App.3d at p. 23.)

Even as established, there is a patchwork quality to the requirement of rebuttal of derogatory information about an administrator. It appears to affect demotion decisions based upon written reports to school boards, but not those based on oral recommendations or those initiated by board members themselves on the basis of their own knowledge.

Most important in this connection are the three exceptions in the statute. Section 44031 *prohibits* inspection or rebuttal of "ratings, reports, or records which (1) were obtained prior to the employment of the person involved, (2) were prepared by identifiable examination committee members, or (3) were obtained in connection with a promotional examination." Those materials are obviously crucial to promotion, demotion, or other employment determinations, and it would be unreasonable to conclude that because the employee may not rebut them, the board may not consider them. These provisions show that the inspection and rebuttal right is not a limitation upon the matters available for board consideration.

## III

Even assuming arguendo the instant school board partially based its demotion decision on procedurally deficient information, the majority's use of a "but for" standard of review[4] is unsupported. Such a standard is appropriate in only two instances—where cause must be shown to support a personnel decision, or where the decision allegedly was based on the employee's exercise of a constitutional right. (See *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 782-783 [97 Cal.Rptr. 657, 489 P.2d 537].) The majority opinion bears this out, relying solely upon such cases to support its "but for" standard. (*Ante,* p. 715, citing *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480] (infringement of constitutional rights alleged); *Bonham* v. *McConnell, supra,* 45 Cal.2d 304 (requirement of cause); *Mt. Healthy City Board of Ed.* v. *Doyle, supra,* 429 U.S. 274 (infringement of constitutional rights alleged); *Byrd* v. *Savage, supra,* 219 Cal.App.2d 396 (requirement of cause).)

The present case, however, involves neither a required showing of cause (see *Board of Education* v. *Swan, supra,* 41 Cal.2d 546, 555-556, and other authorities cited *supra*) nor any allegation the demotion was retaliation for plaintiff's exercise of a constitutional right. Instead, the correct standard of review is that applied where an employee serves in a position at the pleasure of the employer.

The standard was stated in *Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d 771, 783: "A public employee serving at the pleasure of the appointing authority . . . is by the terms of his employment subject to removal without judicially cognizable good cause. . . . 'Considerations of comity and administrative efficiency counsel the courts to refrain from any attempt to substitute their own judgment for that of the responsible officials.' [Citation.] Only when such a public employee can show that his employment has been unjustifiably conditioned on the waiver of his constitutional rights will the courts intervene and give relief." (5 Cal.3d at p. 783; see *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697]; *Abel* v. *Cory* (1977) 71 Cal.App.3d 589, 595 [139 Cal.Rptr. 555].)

---

[4]"As we have explained heretofore in other contexts, however, the correct inquiry focuses not merely on whether the school board considered the Cloud memoranda in deciding to reassign plaintiff, but on whether *but for* the memoranda the board would not have reassigned him. (See *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 592-594 [100 Cal.Rptr. 16, 493 P.2d 480]; *Bonham* v. *McConnell* (1955) 45 Cal.2d 304 [288 P.2d 502]; see also *Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 283-287 [50 L.Ed.2d 471, 481-484, 97 S.Ct. 568]; *Byrd* v. *Savage* (1963) 219 Cal.App.2d 396 [32 Cal.Rptr. 881].)" (*Ante,* p. 715.)

*Bogacki* is particularly relevant. In that case, all the reasons cited by the employer for removing plaintiff were found to be erroneous. The reasons thus were disregarded by the court. We held that because plaintiff served at the pleasure of the employing authority—similar to the instant plaintiff's administrative assignment—the fact that the resulting record failed to establish a specific cause for dismissal did not invalidate the dismissal. "This would be tantamount to saying that a public agency *cannot employ* persons subject to removal at *its* pleasure, for if judicially cognizable good cause is requisite to removal in all cases there can be no wholly subjective power of removal in the agency. [¶] Such is not the law in California, nor has it ever been." (*Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d at pp. 782-783 (fn. omitted).)

In the present case, of course, the board of education was not required to consider or prove judicially cognizable cause to demote plaintiff. The majority nevertheless hold the matter must be remanded because the board voluntarily considered both valid causes[5] and others that are procedurally deficient for lack of rebuttal opportunity. The defect in this procedure, the majority assert, is that, given the opportunity, plaintiff may be able to successfully counter the unrebutted reasons.

However, even assuming that was done and those reasons were shown to be nonexistent and were disregarded, the additional concededly valid reasons still remain to support the school board's decision. We must remember this is not a case of alleged retaliation for exercise of a constitutional privilege but, even under the majority rule, only one in

[5]In notifying plaintiff of his demotion, the school board provided a list of 14 reasons and attached supporting documentation consisting of a memorandum written by Associate Superintendent Don A. Cloud. The Cloud memorandum listed 30 separate items relating to plaintiff's performance, including reports, evaluations, and memoranda. Plaintiff contends the board erred by considering items 11 to 30 attached to the Cloud memorandum because plaintiff had not provided rebuttal to them. Items 1 to 10, however, appear to be conceded as procedurally valid, and their use is not challenged. Those items include such causes as plaintiff's inadequate implementation of suggestions for providing reading and math labs, using criterion-referenced tests, reducing certain pupil-teacher ratios, and delineating job responsibilities of staff members (item 1); a need for better communication with his subordinates (item 2); a need to give subordinates more time to contribute suggestions, excessive attention to minor classroom physical details rather than teaching effectiveness, a need to support staff in correcting student behavior problems, a need for greater involvement with students and student groups (item 3); a need to direct improvements in his school's curriculum, a need to convince educators and the community of the effectiveness of his school's student discipline, a need to be more sensitive to the needs of parents and staff, devoting too much time to conferences outside the school district, relying too much on his staff for decision making (item 5), and a lack of a well-defined school curriculum design, particularly in basic subject areas (item 7).

which *some* of the board's reasons *may* be invalid. To concede everything plaintiff alleges is to grant only that he could successfully counter the unrebutted reasons. Those reasons having been rebutted, however, valid cause concededly still exists in the record supporting the board, even though no cause at all need be shown. Such basis of support for the decision far exceeds that found adequate in *Bogacki.*[6]

For excellent reason, communities and their school boards are granted great discretion in selecting those who lead their schools. It is unwise to erect procedural barriers to the exercise of that discretion, particularly where, as here, an administrator has been afforded ample notice of deficiencies, counseling, and remediation. To do so, I believe, is to elevate procedure above the welfare of pupils.

I would affirm the judgment.

---

[6]The "but for" test applied here would be inappropriate even in the case of an employing authority whose decisions must be supported by evidence. Where such an authority's supporting reasons are found to be partially invalid, the proper remedy is to remand to the employing authority for reconsideration of its decision. (*Shepherd* v. *State Personnel Board* (1957) 48 Cal.2d 41, 51 [307 P.2d 4]; *Bonham* v. *McConnell, supra,* 45 Cal.2d 304, 306; *Wingfield* v. *Fielder* (1972) 29 Cal.App.3d 209, 223 [105 Cal.Rptr. 619]; *Doyle* v. *Board of Barber Examiners* (1966) 244 Cal.App.2d 521, 526 [53 Cal.Rptr. 420]; 2 Cal.Jur.3d, Administrative Law, § 301, at p. 574.)