Vivian E. HEATH, Plaintiff and Appellant,

v.

REDBUD HOSPITAL DISTRICT, Redbud Hospital Board of Directors, A. Kuykendall, an Individual, L. Prigmore, an Individual, J. Sharp, an Individual, F. Hayes, an Individual et al., Defendants and Appellees.

No. 78–1301.

United States Court of Appeals, Ninth Circuit.

May 30, 1980.

Jay C. White, Redwood City, Cal., for plaintiff and appellant.

Peter Bassing, Sheeks & Oswald, San Rafael, Cal., for defendants and appellees.

Before TRASK and SKOPIL, Jr., Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge.

This is an appeal from a grant of summary judgment in an action brought by plaintiff Heath against Redbud Hospital Dis-

* The Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

trict, Redbud Hospital Board of Directors, and four individual members of the five-man board. Jurisdiction below was predicated on 42 U.S.C. § 1983 and 28 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291.

The district court held that Heath's termination from her position as Administrator of the Redbud Hospital accorded with due process of law and implicated neither plaintiff's property interests nor liberty interests and granted summary judgment. We agree and affirm.

Initially, the district court dismissed the institutional defendants on the authority of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Subsequently, at about the time defendants' motion for summary judgment was ripe for decision, plaintiff sought leave to file a Second Amended Complaint renaming the Redbud Hospital District and Redbud Hospital Board of Directors as defendants. Leave to file the Second Amended Complaint was denied at the time summary judgment was granted to defendants.

█ Shortly after the appeal was filed, the Supreme Court decided *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) which overruled the *Monroe v. Pape* concept that the entity defendants are not "persons" within the meaning of 42 U.S.C. § 1983. In the interests of fairness, this court permitted supplemental briefing to assert this assignment of error on appeal. Cf. *Moitie v. Federated Dep't Stores, Inc.*, 611 F.2d 1267 (9th Cir. 1980). It is, nevertheless, clear that *Monell* is of no assistance to plaintiff. Plaintiff's tendered Second Amended Complaint relied specifically and exclusively upon the doctrine of *respondeat superior* to pin liability to the entity defendants. *Monell* precludes such reliance. Plaintiff also failed to allege any claimed unconstitutional action which "implements or executes a policy statement, ordinance, regulation or decision officially adopted and

promulgated by the body's officers" (*Monell*, 436 U.S. at 690, 98 S.Ct. at 690) or any "action pursuant to official . . . policy of some nature [causing] a constitutional tort" (*Monell* at 691, 98 S.Ct. at 690). It will more clearly appear from discussion of the merits that the established facts cannot support a further amendment to bring the case within *Monell's* requirements.

Vivian Heath was hired as a bookkeeper at Redbud Hospital in 1971. After three months she was interviewed by the Personnel Committee, the position of Controller was created, and she was appointed to the position. She served as Controller until 1974 when she became Administrator, and the position of Controller was not filled. A special meeting of the Board was held on August 17, 1976 concerning the management of the hospital, a discussion was had with Mrs. Heath in executive session, and thereafter in open session a resolution was adopted that "Mrs. Heath be given a further sixty days to show that she can accomplish the proper control and at the end of that time the Board shall reevaluate the performance and if these (sic) are considered inadequate, Mrs. Heath will be placed in the position of Controller."[1]

Another Special Board meeting was held October 18, 1976. There was an executive session. In open session the following resolution was adopted: "to ask for Mrs. Heath's resignation or termination to be effective November 1, 1976." Four of the five Board members were in favor of termination.

A regular meeting of the Board was held on October 26, 1976. The minutes of the October 18th meeting were corrected by adding: "The Board asked Mrs. Heath if she would like the opportunity to go into executive session to discuss any matters. Mrs. Heath declined the opportunity to do so." At the October 26th meeting Mrs. Heath read and presented a letter to the Board formally requesting a public hearing regarding her termination as Administra-

---

1. The Board Chairman testified that when Mrs. Heath was hired as Administrator it was agreed that she would be restored to the posi-
tion of Controller if terminated as Administrator. Mrs. Heath denies any such agreement.

tor. A motion was also made and passed to offer Mrs. Heath the position of Controller. Mrs. Heath declined the offer.

The Redbud Hospital was established pursuant to the Local Hospital District Law (Cal. Health & Safety Code, §§ 32000, et seq.) The Code provides (Sec. 32121): "Each local hospital district shall have and exercise the following powers: (h) To prescribe the duties and powers of the hospital administrator, secretary and other officers and employees of any such hospitals; to determine the number of and appoint all such officers and employees, and to fix their compensation, *which officers and employees shall hold their offices or positions at the pleasure of the boards.*" (Emphasis supplied.)[2] Also, the hospital by-laws explicitly state: "The Board of Directors may appoint an Administrator for any hospital to be operated by the District, and such Administrator shall serve at the pleasure of the Board."

 Plaintiff asserts that she had a constitutionally protected "property" interest in her continued employment as Administrator of the Redbud Community Hospital. Property interests, however, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); see *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Plaintiff has identified no California statute or rule to support her claim of entitlement to continued employment, nor has she identified any "mutually explicit understandings", *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), to support such a claim.

The plaintiff also relies on the California common law right of "fair procedure," as articulated most recently in *Ezekial v. Winkley,* 20 Cal.3d 267, 142 Cal.Rptr. 418, 572 P.2d 32 (1977), to supply the "rule" entitling her to claim a legitimate expectation of continued employment. That doctrine has its origin in the decision of *James v. Marinship,* 25 Cal.2d 721, 155 P.2d 329 (1944), a case holding that a labor union, because of its ability to exclude all nonmembers from employment in a particular trade, assumed fiduciary responsibilities not otherwise applicable to private organizations and, accordingly, could not arbitrarily exclude applicants for membership. In *Pinsker v. Pacific Coast Society of Orthodontists,* 1 Cal.3d 160, 81 Cal.Rptr. 623, 460 P.2d 495 (Cal.1969), the court extended the *Marinship* doctrine to reach admission practices of professional societies, membership in which is a practical prerequisite to pursuit of a medical or dental career. It was in reliance on these cases that the court in *Ezekial,* the case cited by the plaintiff, concluded that Kaiser Foundation Hospital could not summarily terminate the plaintiff's surgical residency. In so ruling the court stressed the following facts:

> "Dismissal from Kaiser will, as a practical matter and because of Kaiser's close relationship with other teaching hospitals, prevent plaintiff's acceptance in any other surgical residency program. Successful completion of an approved surgical residency is a prerequisite to attainment of the status of a 'board certified general surgeon,' without which plaintiff cannot practice a surgical specialty in any accredited California hospital."

*Ezekial,* 142 Cal.Rptr. at 420, 572 P.2d at 34.

Two factors militate against reliance on *Ezekial* to support the conclusion that plaintiff had a legitimate expectation of continued employment. First there is absent in this case the licensing or certification factor, denial of which made pursuit of an individual's chosen trade or profession impossible in *Marinship, Pinsker* and *Ezekial.* Second, is the fact that "[n]o case has yet

---

**2.** Section 32121.5 of the Code provides that the hospital district may enter into a contract of employment with an administrator for a term not to exceed four years. There was no such contract in this case.

applied the *Marinship* doctrine directly to a relationship dependent on employment alone." *Ezekial,* 142 Cal.Rptr. at 423, 572 P.2d at 37.

The absence of a protectible property interest under this kind of statute has on at least two occasions been upheld by the California Supreme Court against a due process challenge to the right of the appointing board to terminate the employee at will. *Barthuli v. Bd. of Trustees of Jefferson County Elementary School District,* 19 Cal.3d 717, 139 Cal.Rptr. 627, 566 P.2d 261 (1977), *cert. denied,* 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); *Bogacki v. Bd. of Supervisors,* 5 Cal.3d 771, 97 Cal.Rptr. 657, 489 P.2d 537 (1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1301, 31 L.Ed.2d 488 (1972).

■ Plaintiff also argues that the Board's decision to terminate her infringed her constitutionally protected interest in liberty. The Supreme Court has recognized that where "a person's good name, reputation, honor or integrity is at stake" his right to liberty is implicated and deserves constitutional protection. *Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707.

"In the context of *Roth*-type cases, a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions *outside* of professional life. Liberty is not infringed by a label of incompetence, the repercussions of which primarily affect professional life, and which may well force the individual down one or more notches in the professional hierarchy. The distinction is not perfect; our utility affects our dignity and worth whether viewed from within or without. However, implicit in such a distinction is the notion that the constitutional need for procedural protection is not strong when the charge (e. g., incompetence) involves a matter which is peculiarly within the scope of employer-employee relations and when the likely results of even a false

charge are reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession."

*Stretten v. Wadsworth Veteran's Hospital,* 537 F.2d 361, 366 (9th Cir. 1976) (emphasis in original).

The present case is factually almost indistinguishable from *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the only difference being that in *Bishop* the police officer met privately to learn the reasons for his dismissal, while Mrs. Heath refused to do so. *Bishop* holds that charges made privately, even if stigmatizing and erroneous, do not infringe a liberty interest. Thus the Board's procedural offer to Mrs. Heath seems to be vindicated.

In oral argument plaintiff's counsel referred to newspaper mention of a Grand Jury probe and the stigmatizing implication of criminal misconduct. Our search of the record has disclosed the following in this context. Plaintiff, in her deposition, said that the Chairman of the Grand Jury attended an October Board meeting prior to her termination. A newspaper article on October 21, 1976, quoted Board member Prigmore: "He said that he would be glad to have a session with the grand jury to tell them all about his reasons for wanting Heath terminated as the hospital's administrator." A subsequent article, reporting the appointment of a temporary replacement for Heath, quoted Leah Connors, a Board member and Heath supporter: "the grand jury was going to investigate all actions taken pertaining to the dismissal of Heath" and on September 23, 1976, the same Board member, Connors, had released a long letter regarding the Redbud Hospital for publication relating her view of improper activities by other Board members. From the foregoing brief references to the Grand Jury, we find nothing stigmatizing to Heath. On the contrary, the anticipated inquiry apparently centered on the conduct of the members of the Board, who had been vigorously criticized by member Connors in her September letter to the newspaper.

212

Before 1963, the California law required a Grand Jury examination of all hospital districts (Penal Code 925), in addition to the books and records of county officers. All quoted comments regarding the Grand Jury apparently presumed the continued existence of such general investigatory powers, and were unrelated to implications of criminal misconduct on the part of Mrs. Heath.

 Finally, it should be noted that Mrs. Heath was accorded all the due process due under these circumstances. Mrs. Heath was offered, and refused, an executive session with the Board to discuss the reasons for her termination. Such a meeting would suffice to give her further notice of her deficiencies, an opportunity to examine the evidence against her and an opportunity to present her side of the story to the decision-maker. Due process does not require a full adversary hearing. *Stretten v. Wadsworth Veteran's Hospital*, 537 F.2d 361 (9th Cir. 1976); *Ong v. Tobey*, 552 F.2d 305 (9th Cir. 1977); *Miller v. Williams*, 590 F.2d 317 (9th Cir. 1979).

Affirmed.