743 F.2d 1310
 40 Fed.R.Serv.2d 83, 20 Ed. Law Rep. 70
 Ray E. LOEHR, Plaintiff-Appellant,
v.
VENTURA COUNTY COMMUNITY COLLEGE DISTRICT; Board of
Trustees of the Ventura County Community
College District; David Bender, Jr.;
James T. Ely, and Robert
Stone, Defendants-Appellees.
 No. 83-5884.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 2, 1984.
Decided Sept. 26, 1984.
 
 Robert S. Thompson, Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., for plaintiff-appellant.
 Stuart W. Rudnick (James L. Morris, Musick, Peeler & Garrett, Los Angeles, Cal., John R. McConica, II, Drescher, McConica & Young, Ventura, Cal., Melanie M. Poturica, Liebert, Cassidy & Frierson, Los Angeles, Cal., with him on the brief), for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, SCHROEDER, and NELSON, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Loehr sought injunctive relief and damages under 42 U.S.C. Sec. 1983 and the California Constitution for alleged deprivations of liberty and property. The district court granted summary judgment against him. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 
 2
 * In 1974 the Board of Trustees (Board) of the Ventura County Community College District (District) hired Loehr as superintendent of the District. In 1979, after rating his performance "outstanding," the Board offered him a four-year contract to continue as superintendent. Loehr accepted.
 
 
 3
 Later that year, two new Trustees, Bender and Ely, won election to the five-member Board. On April 15, 1980, Bender, Ely, and a third Trustee, Stone, voted in closed executive session to request Loehr's resignation. After the vote, the Board called Loehr into the meeting. Ely gave Loehr a letter, prepared by Ely after private consultation with an outside attorney, and signed by Ely as President of the Board. It read in part:
 
 
 4
 [I]f you choose to decline the Board's offer to entertain a resignation, we are prepared to undertake all necessary actions to terminate and rescind your contract of employment. Upon request, you would be provided with a written summary of your actions which, in the Board's view, have constituted a material breach sufficient to justify a rescission.
 
 
 5
 On April 20, after Loehr had not resigned, the Board met again in executive session, invited him into part of the meeting, and read to him a long list of questions about his performance as superintendent. Ely asked him to respond to the questions at the next meeting. Ely also told him there were no "charges" against him.
 
 
 6
 The Board held another executive session on April 24 to listen to Loehr's answers. The Trustees did not ask him to clarify any of his responses and, after a short conference without Loehr present, Ely told him that the Board would proceed with legal action to remove him from his duties as superintendent. The District claims the Board authorized Ely to proceed, assisted by counsel, with this task by himself.
 
 
 7
 The next day Ely visited Loehr's office. After a short conversation, Ely gave him an undated eight page letter. The letter advised that "the question of whether you should be afforded procedural due process prior to actual termination ... has been resolved in favor of affording such due process," and then listed twenty-one documented "specifications" that "constitute misfeasances or malfeasances that the Board believes are sufficient to indicate you have materially breached your contract of employment with the District." The letter also stated that Loehr had five days to request a hearing from the Board, but if he did not want to meet with the Board, he could respond to the "specifications" in writing.
 
 
 8
 On April 28, Loehr wrote a letter to Ely denying all twenty-one specifications. The next day Loehr's attorney sent the Board a letter informing it that Loehr intended to complete his contract. On May 5, however, the Board voted three to two to terminate Loehr as superintendent.
 
 
 9
 During the next ten days, Ely spoke to meetings at the District's administrative offices and two of the District's three campuses about Loehr's dismissal. Bender held a similar meeting at the third campus. The Board also held a meeting at which various District employees spoke favorably of the Board's decision to remove Loehr. A number of articles and editorials appeared in local newspapers reporting these events and other aspects of Loehr's dismissal, including comments from Ely about an ongoing supervisory grand jury investigation into the affairs of the District. Soon afterwards, on June 3, Loehr sued the District, the Board, and Trustees Ely, Bender, and Stone under 42 U.S.C. Sec. 1983 and the California Constitution, art. I, Sec. 7(a), for deprivations of his liberty and property.
 
 
 10
 The district court initially granted Loehr a preliminary injunction reinstating him as superintendent. We reversed and remanded in an unpublished decision, because Loehr had failed to show an irreparable injury and a balance of hardships tipping decidedly in his favor. After our remand and further pleadings on both sides, the district judge refused under Fed.R.Civ.P. 15 to allow Loehr to add additional defendants and amend and supplement his complaint to raise claims under state law, 42 U.S.C. Secs. 1985, 1986, and 18 U.S.C. Sec. 1001. He then granted summary judgment in favor of the individual defendants, holding they possessed qualified immunity under both federal and state law from Loehr's suit. Subsequently, the district judge granted summary judgment in favor of the District and the Board. He held that California law gave Loehr no protected property interest in his employment as supervisor, and that he suffered no deprivation of a liberty interest in his reputation at the hands of the Board or District because they made no public disclosure of the reasons behind his discharge before he filed suit. Loehr appealed. After setting out our standards for review, we discuss, first, Loehr's claim that his due process rights were violated by depriving him of a property interest; second, his claim that his reputation was damaged, injuring his liberty interest; and third, his claim that the district court should have allowed him to amend and supplement his complaint.
 
 II
 
 11
 We review a summary judgment de novo. E.g., Martino v. Santa Clara Valley Water District, 703 F.2d 1141, 1145 (9th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). We may affirm only if the record, read in the light most favorable to the loser, reveals no genuine issues of material fact and shows the winners were entitled to judgment as a matter of law. E.g., Dosier v. Miami Valley Broadcasting Corp., 656 F.2d 1295, 1300 (9th Cir.1981); Fed.R.Civ.P. 56(c). We review the district court's interpretation of state as well as federal law de novo. In re McLinn, 739 F.2d 1395 (9th Cir.1984) (en banc). Finally, we review for abuse of discretion the denial of a motion to amend. Hurn v. Retirement Trust Fund of the Plumbing, Heating and Piping Industry, 648 F.2d 1252, 1254 (9th Cir.1981) (Hurn ).
 
 III
 
 12
 Loehr claims a property interest in continued employment as superintendent of the District. As the Supreme Court held in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (Roth ), property interests do not arise from the United States Constitution but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Federal constitutional law, however, "determines whether that interest rises to the level of a 'legitimate claim to entitlement' protected by the Due Process Clause." Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (citations omitted). It was not argued before us that this distinction limits Loehr's action under 42 U.S.C. Sec. 1983 on the ground that the limited nature of his state property interests are inadequate to pass the legitimate entitlement bar for interests under the fourteenth amendment. Cf. Parratt v. Taylor, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 1916-17, 68 L.Ed.2d 420 (1981) (finding state remedy adequate in part because of the limited nature of the deprivation); Barthuli v. Board of Trustees, 434 U.S. 1337, 1338, 98 S.Ct. 21, 22, 54 L.Ed.2d 52 (1977) (Rehnquist, Circuit Justice) ("the Court might conclude that California's refusal to grant specific performance where there is an adequate remedy at law acts as a limitation upon the expectation of the employee in continued employment"). We therefore will apply the analysis used by the Supreme Court in its employment cases. See Bishop v. Wood, 426 U.S. 341, 344-47, 96 S.Ct. 2074, 2077-79, 48 L.Ed.2d 684 (1976) (Bishop ); Perry v. Sindermann, 408 U.S. 593, 601-03, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972) (Perry ); Roth, 408 U.S. at 577-78, 92 S.Ct. at 2709-10; see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law .... Once that characteristic is found, the types of interests protected as 'property' are varied ....").
 
 
 13
 Loehr asserts three interrelated sources for a "legitimate claim of entitlement," Roth, 408 U.S. at 577, 92 S.Ct. at 2709, to a continued employment as superintendent: his contract, state law, and official Board policy. As Roth makes clear, the importance of a contract as a source of a property interest lies not in the mere existence of some agreement, but in its terms. See 408 U.S. at 566 n. 1, 578, 92 S.Ct. at 2703 n. 1, 2709. California agrees, see Walker v. Northern San Diego County Hospital District, 135 Cal.App.3d 896, 902-05, 185 Cal.Rptr. 617, 620-22 (1982), and emphasizes that in contracts of employment for District superintendents, "dismissal and imposition of penalties ... shall be in accordance with the terms of the contract." Cal.Educ.Code Sec. 72411.5 (West 1978).
 
 
 14
 Paragraphs 7 and 8 of Loehr's contract provide that the contract incorporates "applicable" state laws and rules, and regulations of the Board of Governors of the California Community Colleges; that the parties may change or terminate the contract by mutual assent; and that "the provisions of state law relating to the method of terminating a superintendent's contract upon its completion are to be complied with by the Governing Board." These terms provide no substantive entitlement in themselves. They simply refer to state law.
 
 
 15
 Loehr argues, however, that these terms provide a property interest because they limit the Board's authority to dismiss him before the end of his term to either a reason under Cal.Educ.Code Secs. 72411, 72411.5 (West 1978) or Cal.Labor Code Sec. 2924 (West Supp.1984). Section 72411.5 simply refers us back to the contract, so the only meaningful portion of the state education code "relating to the method of terminating a superintendent's contract" is section 72411. We believe Loehr correctly assumes his contract incorporates this section, but neither it nor any other section of California law relating to the employment of superintendents provides him a property interest in his position.
 
 
 16
 In Barthuli v. Board of Trustees, 19 Cal.3d 717, 566 P.2d 261, 139 Cal.Rptr. 627 (1977) (Barthuli ), cert. denied, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); see generally The Supreme Court of California 1976-1977, 66 Calif.L.Rev. 180, 448 (1978), the California Supreme Court held that an associate superintendent of a local school district, although under a four-year contract, held no "property right in the administrative position. Rather, the Legislature has made clear by sections 13314 (Secs. 44893, 87454) and 13315 (Secs. 44897, 87458) that petitioner's tenure rights are those of a classroom teacher and not those of an administrator." 19 Cal.3d at 722-23, 566 P.2d at 264, 139 Cal.Rptr. at 630. By parenthetically citing the statutory provisions governing tenure of community college administrators, see Cal.Educ.Code Secs. 87454, 87458 (West 1978), the California Supreme Court clearly indicated its holding covered those positions as well as the positions of elementary and secondary school personnel. Furthermore, it expressly considered Cal.Educ.Code Sec. 35031 (West 1978) in reaching its holding. See 19 Cal.3d at 720-21, 566 P.2d at 262-63, 139 Cal.Rptr. at 628-29. Section 35031 is virtually identical to section 72411, the section Loehr erroneously relies on to establish an entitlement to continued employment as superintendent.
 
 
 17
 Loehr's case differs from Barthuli because he was a superintendent, not just an associate superintendent, but the difference matters little. Part of section 72411 does apply only to a superintendent and provides for notice to him six months before the end of the contract if the trustees of a district decide not to reemploy him. If the trustees "fail[ ] to reelect or reemploy the superintendent" without giving that notice, his contract is automatically renewable. This provision, however, creates no property right. As a procedural requirement, it is not "intended to be a 'significant substantive restriction' " on the Board's decisionmaking power over the employment of superintendents, see Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984) (Goodisman ) (citing Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.1980)), and provides no "articulable standard" that would define such a restriction, see Parks v. Watson, 716 F.2d 646, 657 (9th Cir.1983). Indeed, section 72411.5 provides instead for wholly contractual restrictions. Thus, the procedural requirement of section 72411 creates no constitutionally protected property interest. See Goodisman, 724 F.2d at 820-21.
 
 
 18
 The Barthuli holding also indicates California would not interpret Cal.Labor Code Sec. 2924 (West Supp.1984) as providing Loehr a property interest under his contract. Section 2924 provides "[a]n employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it." We said in Nuelsen v. Sorensen, 293 F.2d 454, 461 (9th Cir.1961), that "[a]n employment contract for a specified term, made in California, may be terminated only for a reason specified in section 2924" and the Supreme Court pointed out in Logan v. Zimmerman Brush Co., 455 U.S. at 430, 102 S.Ct. at 1155, that "[t]he hallmark of property ... is an individual entitlement ... which cannot be removed except 'for cause.' " Nevertheless, the California Supreme Court in Barthuli faced exactly such an employment for a specified term to which the "for cause" limits of section 2924 might apply. It nonetheless found no property right existed. Barthuli controls here. See 19 Cal.3d at 722-23, 566 P.2d at 263-64, 139 Cal.Rptr. at 629-30; cf. Williams v. County of Los Angeles, 22 Cal.3d 731, 736, 586 P.2d 956, 958-59, 150 Cal.Rptr. 475, 477-78 (1978) (finding a property interest in continued public employment from a specific "for cause" rule governing the particular position); see also Williams v. Department of Water and Power, 130 Cal.App.3d 677, 680, 181 Cal.Rptr. 868, 870 (1982). The same reasoning disposes of Loehr's claim that Cal.Civ.Code Sec. 1655 (West 1973) created a protectable property interest because it implies good faith and fair dealing in contracts.
 
 
 19
 We express no opinion whether Loehr could maintain an action for breach of contract under California law. Cf. Barthuli, 19 Cal.3d at 720, 566 P.2d at 262, 139 Cal.Rptr. at 628 ("petitioner possesses ... an action for breach of contract."); Holtzendorff v. Housing Authority, 250 Cal.App.2d 596, 609, 58 Cal.Rptr. 886, 895 (1967) (action for wrongful discharge invoking Cal.Labor Code Sec. 2924 under a public employment contract), cert. denied, 389 U.S. 1038, 88 S.Ct. 775, 19 L.Ed.2d 827 (1968). We also express no opinion whether Cal.Educ.Code Sec. 72411.5 (West 1978) would permit a District superintendent, unlike the school administrator in Barthuli to whom section 72411.5 would not apply, to contract for a property interest in continued employment. In this case, Loehr contracted for no more than California law automatically provides. We see no reason to upset the district judge's interpretation of that law as providing Loehr no property right in his position as superintendent.
 
 
 20
 Consideration of various procedural provisions of California law and Board policy does not alter our conclusion. For example, Loehr cites Cal.Educ.Code Sec. 87031 (West 1978). In Miller v. Chico Unified School District Board of Education, 24 Cal.3d 703, 713-14, 597 P.2d 475, 480-81, 157 Cal.Rptr. 72, 77-78 (1979) (Miller ), the California Supreme Court held that under the parallel section for elementary and secondary education, Cal.Educ.Code Sec. 44031 (West 1978), a school district could not make employment decisions based on derogatory information in a personnel file unless it had given the affected employee timely notice for rebuttal at the time it first accepted the information for filing. Not only does Loehr's case not present this problem, but Miller implies that section 44031 creates no property interest by stating "[p]laintiff properly does not contend that he is entitled to a due process hearing." 24 Cal.3d at 712 n. 9, 597 P.2d at 480 n. 9, 157 Cal.Rptr. at 77 n. 9. Similarly, Cal.Educ.Code Sec. 72202 (West 1978) (requiring official minutes), Cal.Educ.Code Sec. 72231 (West 1978) (requiring enforcement of rules), Cal.Govt.Code Sec. 54952.6 (West 1983) and Board policy 1.07(a) (defining authority of Trustees pursuant to the Ralph M. Brown Act, Cal.Govt.Code Secs. 54950-61 (West 1983)), Board policy 2.09(c) (methods of presenting charges), and Board policy 2.14 (due process and submission of complaints to the Board) do not transform Loehr's expectations into a property interest. As well as applying to the notice requirement of section 72411, the rule of Goodisman, 724 F.2d at 820, also controls here:
 
 
 21
 Procedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest. Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.1980). A constitutionally protected interest has been created only if the procedural requirements are intended to be a "significant substantive restriction" on ... decision making. Id.; Parks v. Watson, 716 F.2d 646, 656-57 (9th Cir.1983).
 
 
 22
 Cf. Mabey v. Reagan, 537 F.2d 1036, 1042 (9th Cir.1976) (general nonconstitutional statement on duty to follow procedures); LaBelle v. San Francisco Unified School District, 140 Cal.App.3d 292, 301, 189 Cal.Rptr. 530, 536 (1983) (limiting rights acquirable by local regulation or charter). The provisions cited by Loehr do not meet the standard of Goodisman. Cf. Hayward v. Henderson, 623 F.2d 596, 597 (9th Cir.1980), quoting Maloney v. Sheehan, 453 F.Supp. 1131, 1141 (D.Conn.1978) ("A guarantee of procedural fairness does not establish a property interest"); 61 Op.Cal.Att'y Gen. 283, 290 (1978) (taking narrow view of procedural provisions under the Ralph M. Brown Act, Cal.Govt.Code Secs. 54950-61 (West 1983)).
 
 
 23
 Because Loehr possessed no property interest in his continued employment as superintendent, the Board owed him no due process under either federal or state constitutional law in relieving him of that position. See Perry, 408 U.S. at 599, 92 S.Ct. at 2698; Skelly v. State Personnel Board, 15 Cal.3d 194, 207-08, 539 P.2d 774, 783-84, 124 Cal.Rptr. 14, 23-24 (1975). Accordingly, we affirm the district court's summary judgment on this issue.
 
 IV
 
 24
 The district court found that the Board never publicly stated any reasons for Loehr's dismissal until it filed its pleadings in this case and that the Trustees who voted to terminate Loehr's contract never publicly stated any reason for their action except a belief Loehr had failed to perform competently as superintendent and could no longer work effectively with the Board and other administrative personnel. Loehr argues, however, that the Board and the Trustees who voted against him deprived him of a liberty interest under both the United States and California constitutions by impugning his honesty and integrity and failing to maintain his personnel file properly.
 
 
 25
 Loehr purports to identify several public statements impugning him before his dismissal on May 5, 1980, but the only instances supported by record citation are two conversations involving Tullis. Ely told Tullis the Board would fire Loehr. Bender told Tullis the Board would fire Loehr "because they already had the votes." The various public statements after his dismissal that Loehr complains of involve newspaper stories that allegedly connected him to a grand jury investigation, incorrectly led people to believe the Board had given him due process, and falsely charged him with various malfeasances. Loehr also charges the Trustees who voted against him conducted public meetings that encouraged others to ridicule him. Out of this multitude of claims by Loehr, none involve a deprivation of any liberty interest.
 
 
 26
 Loehr's failure to demonstrate a property interest in his continued employment will not defeat a properly asserted liberty interest claim. See McGhee v. Draper, 639 F.2d 639, 641, 643 & n. 2 (10th Cir.1981). As Roth, 408 U.S. at 575, 92 S.Ct. at 2708, and Bishop, 426 U.S. at 348, 96 S.Ct. at 2079, make clear, however, the mere fact that the Board dismissed Loehr as superintendent deprives him of no liberty interest.
 
 
 27
 We held in Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1100 (9th Cir.1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982) (Bollow ), that "when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." We then defined what must be proven to show that community damage:
 
 
 28
 To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to "stigmatize" or otherwise burden the individual so that he is not able to take advantage of other employment opportunities.
 
 
 29
 This court has described the stigma that infringes liberty interests as that which "seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities ...." Subsequent panels have set the boundary of liberty interests at accusations of "moral turpitude," such as dishonesty or immorality--i.e., charges that do not reach this level of severity do not infringe constitutional liberty interests.
 
 
 30
 Id. at 1101 (citations omitted); (emphasis in original).
 
 
 31
 The content of Bender's and Ely's comments to Tullis fail to reach this level. The various newspaper stories commenting on both Loehr's alleged incompetence and a grand jury investigation of the District's operations also fall short of Bollow. In Heath v. Redbud Hospital District, 620 F.2d 207, 211-12 (9th Cir.1980), we reviewed statements that, although not published in newspapers, also involved alleged incompetence and investigatory grand jury proceedings. We found the statements insufficiently stigmatizing to infringe protected liberty interests. California law had in the past authorized general, noncriminal investigations of hospital districts, and the comments "apparently presumed the continued existence of such general investigatory powers." Id. at 212. The grand jury investigation mentioned in the articles that also mentioned Loehr appears to have involved a similar, noncriminal advisory proceeding. See Cal.Penal Code Secs. 925, 926, 933 (West Supp.1984). This seems clear from the statement attributed to Ely by the newspaper that the grand jury investigation "was ordered because it was our feeling that the district operations were run so badly that we needed professional opinions." As a result, the comments linking Loehr to the grand jury did not imply criminality or involve "accusations of 'moral turpitude,' " Bollow, 650 F.2d at 1101.
 
 
 32
 Loehr's claim that the Board and the Trustees incorrectly led people to believe he had received due process fails to implicate any liberty interest either. Even if such misdirection occurred, the allegation that a person received due process does not necessarily reflect on his reputation, much less reputation in a context sufficient to invoke the protections of due process. Cf. Paul v. Davis, 424 U.S. 693, 701, 711-12, 96 S.Ct. 1155, 1160, 1165-66, 47 L.Ed.2d 405 (1976) (reputation alone insufficient to invoke due process).
 
 
 33
 A review of the newspaper articles reporting the Board's specification of malfeasances against Loehr shows that all but one clearly obtained the list from the Board's answer to Loehr's suit. As the Supreme Court held in Bishop, 426 U.S. at 348, 96 S.Ct. at 2079, a "communication ... made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress ... surely cannot provide retroactive support for his claim."
 
 
 34
 The only article containing a list of malfeasances and appearing before Loehr filed suit was in the May 9, 1980 edition of the Ventura College Press:
 
 
 35
 No specific charges have been leveled against Loehr, but reasons for his removal cited by various trustees are:
 
 
 36
 --A $1.1 million error in the transfer of funds; the error had not been reported when found and had been covered up by Loehr's administration for months. The Ventura County Grand Jury later cited the action as "gross incompetence."
 
 
 37
 --An athletic scandal at Oxnard College that involved falsifying student transcripts.
 
 
 38
 --Four major budget cuts at the beginning of the 1979-80 fiscal year that forced a quick spending of a $750,000 surplus.
 
 
 39
 --Growing faculty and management criticism of Loehr's centralized administration, which many thought would destroy the autonomy of the individual colleges.
 
 
 40
 --A conflict of interest charge against Jose Villena, a part-time Ventura College instructor who also served as district auditor.
 
 
 41
 The grand jury referred to was not the grand jury contemporaneously investigating the District, but an earlier one. With perhaps the exception of the faculty and staff criticism, each of the other reasons also involved matters of public record, matters that did not implicate Loehr himself in criminal wrongdoing or dishonesty. At worst, the reasons revealed by someone to the Ventura College Press labeled Loehr incompetent. We held in Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361, 366 (9th Cir.1976), that "[l]iberty is not infringed by a label of incompetence" or "a charge of incompetence or inability to get along with coworkers ...." Accord Bollow, 650 F.2d at 1101; Williams v. Department of Water and Power, 130 Cal.App.3d at 685, 181 Cal.Rptr. at 873; see also Gray v. Union County Intermediate Education District, 520 F.2d 803, 806 (9th Cir.1975); Jablon v. Trustees of California State Colleges, 482 F.2d 997, 1000 (9th Cir.1973), cert. denied, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Cf. Orloff v. Cleland, 708 F.2d 372, 378 & n. 6 (9th Cir.1983) (charges did involve moral turpitude and the district court had excluded the newspaper articles embodying them); Vanelli v. Reynolds School District No. 7, 667 F.2d 773, 778 n. 7 (9th Cir.1982) (dismissal for immoral conduct did implicate liberty interest).
 
 
 42
 Loehr's arguments for a liberty interest under Cal.Educ.Code Sec. 87031 (West 1978) have no more merit than his arguments for a property interest under that section. Under California law, the material Loehr complains about remains "personal," not public, in his personnel file, see Cal.Civ.Code Sec. 1798.3(b) (West Supp.1984) (definition of personal); Cal.Civ.Code Sec. 1798.24 (West Supp.1984) (strict disclosure limitations), and his case is distinguishable from Kendall v. Board of Education, 627 F.2d 1, 5 (6th Cir.1980) (not California law), and Lubey v. City and County of San Francisco, 98 Cal.App.3d 340, 347, 159 Cal.Rptr. 440, 444 (1979) (particular facts made retention of confidentiality in certain police department files "unrealistic"). We see no reason to disagree with the district court's implicit construction of California law of the continued privacy of Loehr's personnel file. "Unpublicized accusations do not infringe constitutional liberty interests." Bollow, 650 F.2d at 1101. Furthermore, section 87031 provides no hearing or opportunity to remove information, however wrong, from a file. It only allows the employee to submit additional information. Even reading the record most favorably to Loehr, it does not indicate he lacked that opportunity or timely notice under Miller v. Chico Unified School District Board of Education, 24 Cal.3d at 713, 597 P.2d at 480-81, 157 Cal.Rptr. at 78.
 
 
 43
 Finally, we know of no authority for holding that the Board or the Trustees who voted against Loehr compromised any liberty interest by merely providing a public forum at which others independently may have defamed Loehr. For this and the other reasons discussed above, none of the harms alleged by Loehr deprived him of any liberty interest. Our analysis precludes any need to reach the Board's theory that no statements after the effective date of Loehr's termination can deprive him of a liberty interest. See Gentile v. Wallen, 562 F.2d 193, 198 (2d Cir.1977). To the extent Loehr attempts to distinguish such interests under the California rather than the United States Constitution, see People v. Ramirez, 25 Cal.3d 260, 268, 599 P.2d 622, 626-27, 158 Cal.Rptr. 316, 320-21 (1979) (confusing liberty and property), we see no reason to disagree with the district judge's interpretation of state law, see, e.g., Williams v. Department of Water and Power, 130 Cal.App.3d at 684-85, 181 Cal.Rptr. at 872-73 (following both Supreme Court and Ninth Circuit precedent). We therefore affirm the district court's summary judgment on this issue.
 
 V
 
 44
 Because of our holdings above, we need not reach the question of the individual Trustees' immunity. See generally Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Royer v. Steinberg, 90 Cal.App.3d 490, 500-04, 153 Cal.Rptr. 499, 504-07 (1979) (California privileges). We must, however, decide whether the district court abused its discretion in denying Loehr's motion under Fed.R.Civ.P. 15 to add new defendants and amend and supplement his complaint.
 
 
 45
 In Hurn, 648 F.2d at 1254, we held "we will reverse a district court's action on a motion for leave to amend only if the action is an abuse of discretion.... and a denial without stated reasons, where the reasons are not readily apparent, constitutes an abuse of discretion," See also, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir.1984); United States v. Webb, 655 F.2d 977, 980 (9th Cir.1981). Here, however, the reasons for denial are readily apparent.
 
 
 46
 Several factors govern the propriety of a motion under rule 15: (1) undue delay, (2) bad faith, (3) futility of amendment, and (4) prejudice to the opponent. E.g., Hurn, 648 F.2d at 1254. First, although delay alone provides an insufficient ground for denying leave to amend or supplement, see Howey v. United States, 481 F.2d 1187, 1191 (9th Cir.1973), it remains relevant. Loehr wished to add seven pendent state law claims, three new federal claims, two additional defendants, and new allegations arising from the Board's defense of the preliminary injunction motion. Loehr's new pleadings involved many of the same occurrences as the original complaint, but also would have substantially complicated and delayed the case for new discovery, responsive pleadings, and considerations of state law. See also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 729, 86 S.Ct. 1130, 1139, 1140, 16 L.Ed.2d 218 (1966) (discretionary considerations for pendent jurisdiction).
 
 
 47
 Second, although Loehr may not have acted in bad faith as far as the motion as a whole, his claim for private damages under 18 U.S.C. Sec. 1001, a federal penal statute, is patently frivolous. Loehr's effort to interject this criminal charge into his action draws his good faith into question.
 
 
 48
 Third, much if not all of Loehr's amendment would prove futile. Subsequent to the denial of amendment in federal court, Loehr attempted to replead these claims in state court and the state court dismissed them as barred by various statutes of limitations and the filing provisions of the California Tort Claims Act, Cal.Civ.Proc.Code Sec. 581 (West 1976). See Loehr v. Ventura County Community College District, 147 Cal.App.3d 1071, 1076, 195 Cal.Rptr. 576, 579 (1983). Those bars would appear to have operated at the time Loehr sought his rule 15 motion. See id. at 1084, 195 Cal.Rptr. at 584. His effort to plead claims under 42 U.S.C. Secs. 1985 and 1986 also seems largely futile. He alleged a conspiracy to deprive him of office, but no "force, intimidation, or threat," see 42 U.S.C. Sec. 1985(1). He alleged a conspiracy to file false statements in court, but no effort to intimidate or influence any party, witness, or juror, or deny him equal protection of the laws, see 42 U.S.C. Sec. 1985(2). To the extent he alleged a conspiracy to deny him equal protection of the laws, see 42 U.S.C. Sec. 1985(3), he failed to allege motivations of class-based invidious discrimination, see Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); cf. Kush v. Rutledge, 460 U.S. 719, 103 S.Ct. 1483, 1488, 75 L.Ed.2d 413 (1983) (no similar requirement under subsection (2)). Because an action under 42 U.S.C. Sec. 1986 depends on a predicate violation of 42 U.S.C. Sec. 1985, Loehr's deficiencies under the latter infect his efforts under the former. See Mollnow v. Carlton, 716 F.2d 627, 632 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).
 
 
 49
 Finally, although we cannot say a grant of Loehr's motion under rule 15 would have caused great prejudice, under these circumstances we believe the district court did not abuse its discretion in denying the motion. We affirm the district court on this issue.
 
 VI
 
 50
 Great expectations may inflame great angers. In this case, Loehr expected more than his position actually secured to him. He also expected different treatment from the Board, and his pleadings reflect his outrage. If there has been a moral or political wrong against him, however, he must still "accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error." Bishop, 426 U.S. at 349-50, 96 S.Ct. at 2079-80. We do not pass upon other claims which may be available to him to vindicate his rights. We hold only that in this case, neither the United States nor the California constitution will support federal judicial review.
 
 
 51
 AFFIRMED.