Desa Mae WELLS

v.

CITY OF HOUSTON, Katherine Whitmire, Individually and in her capacity as Mayor of the City of Houston, City of Houston Civil Service Commission and its Chairman and Commissioners, Both in their Individual capacity and their Successors in Office, Houston Police Department, Chief of Police B.K. Johnson, Assistant Chief of Police R.G. McKeehan, Deputy Chief of Police F.B. Bankston, Captain C.V. Tompkins, and Sergeant B. Owens, all individually and in their capacity as Officers of the Houston Police Department and their Successors in Office.

Civ. A. No. H–82–2696.

United States District Court,
S.D. Texas,
Houston Division.

March 1, 1985.

Linda M. Bullard, Houston, Tex., for plaintiff.

F.J. Coleman, Jr. and John E. Fisher, Houston, Tex., for defendants.

## MEMORANDUM

MORTON, Senior District Judge, Sitting by Assignment.

The plaintiff, a black female, brought this action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, 2000e *et seq.* and the U.S. Const. amend. XIV. She alleges that she was terminated from her job with the Houston Police Department (hereinafter HPD) because of her race and sex. She also alleges that the manner in which she was terminated deprived her of her constitutional rights without due process of law. This memorandum constitutes the Court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52. For the reasons explained below, judgment shall be entered for the defendants.

The plaintiff entered the City of Houston Police Academy on November 3, 1980. She graduated from the Academy and went on to complete the Field Training Program. Thereafter, she was assigned to perform

full police duties as a uniformed patrolman on probationary status. By Texas state law, her probationary period was to end at 12:01 p.m. November 3, 1981. *See* Tex. Rev.Civ.Stat.Ann. art. 1269m, § 12.

Until the middle of October 1981, the plaintiff's performance was .rated as satisfactory by Sergeant Humphreys, her superior. At that time, he informed her that some officers had complained that she did not know her district and that she did not accept criticism well. At the same time or shortly thereafter, Sergeant Humphreys told the plaintiff that Sergeant Owens would be investigating her. Sergeant Owens had been the plaintiff's Field Training Sergeant.

Sergeant Owens asked at least five officers who had worked with the plaintiff whether they had any criticism of her performance. He asked those officers to submit written evaluations of the plaintiff's performance. The officers who wrote reports testified that they were not told what to write, that they had never seen the plaintiff's Field Training file, and that the incidents they reported were true. The Court finds the testimony of the officers who wrote letters about the plaintiff completely credible.

After reviewing the letters submitted to him, Sergeant Owens concluded that the plaintiff was regressing in her performance since the complaints the reporting officers made concerned areas the plaintiff had had trouble with during field training. Sergeant Owens recommended that the Plaintiff's probationary period be extended six months, and that she be closely monitored during that period.

Sergeant Owens' report was forwarded to Lieutenant Eichholtz. Either Lieutenant Eichholtz or some other official conferred with HPD's legal counsel to determine whether the department could extend the plaintiff's probation. Counsel informed HPD that due to an amendment of Tex. Rev.Civ.Stat.Ann. art. 1269m a police officer's probationary period could not be extended. Captain Tompkins then conferred with Chief Johnson and Deputy Chief Bankston about the plaintiff's employment. Chief Johnson instructed Captain Tompkins to give the plaintiff the opportunity to resign, and to tell her that if she did not resign she would be terminated effective the close of business November 2, 1981.

The plaintiff was scheduled to work the evening shift November 2, 1981. She called in sick at approximately 2:30 p.m. About thirty minutes later she was called by Lieutenant Eichholtz. He asked her if she would come to the station. She told him she could not. Lieutenant Eichholtz emphasized that he had an important matter to discuss with the plaintiff which he preferred not to talk about over the phone. When the plaintiff persisted in her refusal to come to the station, Captain Tompkins got on the line and told the plaintiff that she could either resign or she would be terminated at 5:00 p.m. that day. He explained to her that that course of action was necessary because her probationary period could not be extended. He also explained the benefits of resignation over termination to her. The plaintiff had no further contact with HPD that day. At 5:00 p.m. Captain Tompkins informed Chief Johnson that the plaintiff had not resigned.

The plaintiff reported for work the next day in uniform. Captain Tompkins asked for her badge and Lieutenant Eichholtz took the rest of her gear. The plaintiff subsequently asked for a hearing before the Houston Civil Service Commission. No action was taken on that request.

■ The plaintiff alleges that the defendants conspired to deprive her of her right to a hearing before the Civil Service Commission. Once a Houston police officer completes his or her probationary period, he or she can only be terminated for cause after a hearing before the Civil Service Commission. *Sfair v. City of San Antonio*, 274 S.W.2d 581 (Tex.Civ.App. 1955); Tex.Rev.Civ.Stat.Ann. art. 1269m. Probationary police officers are entitled to no such hearing. The crucial issue in this case, then, is whether the plaintiff was terminated before her probationary period ended. If she was, she had no property

right or liberty interest in her continued employment with HPD. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 3 L.Ed.2d 548 (1972); *Burgess v. City of Houston,* 718 F.2d 151, 154 (5th Cir.1983).

■ The Houston Municipal Code provides that after securing the approval of the Civil Service Commission, a department head may remove a probationary employee for cause by serving written notice upon the Commission. Houston Mun.Code § 12–125. That code section, however, does not apply to probationary police officers. Under Texas law, the Chief of Police alone has the authority to remove probationary police officers. Tex.Rev.Civ.Stat.Ann. art. 1269m. There is no requirement that the probationary employee be afforded a hearing or be given written notice before his or her dismissal becomes effective. In short, probationary police officers serve at the discretion of their Chief.

■ The Court believes Chief Johnson's testimony that he told Captain Tompkins the plaintiff would be terminated at 5:00 p.m. November 2, 1981 if she did not resign. When the plaintiff did not resign by that hour, she was terminated automatically. Since she had no vested right to her job at 5:00 p.m. November 2, 1981, her termination did not deprive her of any property right.[1]

The plaintiff would have the Court believe that she was not in fact terminated on November 2, 1981. To reach that conclusion would require the Court to make either of two incredible assumptions. The first is that Chief Johnson lied about when he made his decision to terminate the plaintiff. In support of this contention the plaintiff points to numerous documents that state the plaintiff's termination was subsequent to November 2, 1981, or which state that November 2, 1981 was her termi-

nation date but they themselves are dated after November 2, 1981. In the Court's opinion, these documents do not impeach Chief Johnson's testimony that he terminated the plaintiff at 5:00 p.m. November 2, 1981. Some of the documents—such as that showing a termination date of November 18, 1981—are clearly the product of clerical errors. As for those postdated November 2, 1981 but showing a termination date of November 2, 1981, the Court accepts Chief Johnson's testimony that these were merely written memorials of an action which had already been taken. The Court observed Chief Johnson's demeanor on the stand, and it does not believe he was lying. The plaintiff's continued employment, moreover, could not have been that monumental a matter for Chief Johnson. If the plaintiff was really incompetent, she could have been removed after she was tenured. If she was not incompetent, he would not have had any reason to want to keep her off the force. In short, Chief Johnson had no motive to lie, and gave no indication to the Court that he did so.

The only other way to rule in the plaintiff's favor on her due process claim would be to assume that Chief Johnson simply allowed November 2, 1981 to pass without deciding to terminate the plaintiff. The Court uses the term "deciding" carefully, for as noted above, no writing, explanation, or timely notice were required before the plaintiff could be terminated. Once again, the Court would have to find that Chief Johnson had lied in order to hold that the plaintiff was not terminated on November 2, 1981. He testified that he had already decided that the plaintiff would be terminated when he told Captain Tompkins to call her. The Court would also have to assume that the defendants conducted a hasty investigation and meeting on the plaintiff's future, all with the November 2, 1981 deadline in mind, and then simply

---

**1.** The plaintiff's complaint alleged that she had been deprived of her "constitutional rights." There was really no proof that the plaintiff's termination from HPD had impinged upon her liberty interest in future employment other than her bald assertion to that effect. At any rate,

the Court holds that termination for incompetence is not the sort of charge of moral turpitude that implicates a liberty interest. *See Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1317 (9th Cir.1984).

failed to do anything. Such an assumption is illogical and unbelievable.

The plaintiff also alleges that she was fired because of her race and sex. Her equal protection, § 1981, and Title VII claims are all based upon that alleged discrimination. Each of these three cause of action require proof of discriminatory intent. *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983). Since the defendants presented their rebuttal evidence as to why the plaintiff was terminated, the Court need not specifically find whether the plaintiff made out a prima facie case, whether the defendants articulated a nondiscriminatory reason for her discharge, or whether she proved that the defendants' articulated explanation was pretextual. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Instead, the Court can progress directly to the issue of whether the defendants terminated the plaintiff because of her race and sex. *See Aikens, supra.*

■ With the exception of Sergeant Owens, the plaintiff did not present any evidence that the defendants discriminated against her because of her race or sex. There was no proof that HPD had a policy or practice of discriminating against those groups. There was not any proof that HPD's policies and practices impacted blacks or women adversely. The plaintiff frankly admitted that she did not experience much discrimination during her employment with HPD. The few incidents she did perceive as evidence of discrimination, such as the investigation of her tardiness while a cadet and alleged sexual harrassment by Officer Robinson, were either unsupported perceptions on the plaintiff's part or incidents she never reported to the defendants.

The plaintiff's proof of discrimination against Sergeant Owens was somewhat stronger. She alleged that during her field training period he told her, "I'm prejudiced. Everybody's prejudiced." She also alleged that after she complained to the Black Officers Association about the criticism she received from Sergeant Owens in field training, he issued a memorandum that the chain of grievance should be from trainee to training officer to training sergeant. She also alleged that Sergeant Owens had a reputation for washing out blacks. No foundation was laid to show that the plaintiff was competent to testify as to Sergeant Owens' reputation. Moreover, her testimony was rebutted by Officer Robinson, a black officer with much longer service with HPD than the plaintiff. This evidence was so inconsequential the Court would not have given it much consideration were it not for the fact that Sergeant Owens made a concerted effort to insure that the plaintiff would not be tenured as scheduled.

Sergeant Owens testified that he began his investigation of the plaintiff after officers made complaints to him about the plaintiff's performance. The plaintiff alleged that Sergeant Owens began his investigation after a citizen complained about the plaintiff and a male officer having sexual relations while on duty. The plaintiff's hypothesis was based upon pure hearsay, uncorroborated by any competent evidence. There is nothing in the record to suggest that the plaintiff was reprimanded or otherwise punished for alleged sexual activities while on duty. Whatever Sergeant Owens' motive for beginning his investigation, the Court finds that he carried through with it and recommended that the plaintiff not be tenured because of his good faith belief that she was not competent.

The objective evidence certainly supported his belief. The same complaints were made repeatedly by the officers who wrote letters critical of the plaintiff. All those officers denied having conferred with each other before writing their letters, and all confirmed that the events recounted in the letters were true. As noted above, the

Court believes those officers' testimony. Moreover the plaintiff herself admitted that Sergeant Owens had been critical of her performance since field training.

The fact that Sergeant Owens made no effort to verify the complaints about the plaintiff was somewhat troubling. Sergeant Owens testified that he made no effort to do so for two reasons. First, his recommendation was to extend the plaintiff's probationary period, not to terminate her. The documents admitted into evidence verify that assertion. Sergeant Owens thought he would have plenty of time to verify the complaints during the extended probation. Second, Sergeant Owens testified that he had no reason to doubt the complaints made because they were about the same things the plaintiff had shown weakness in during her field training period. This fact affirmed his perception that the plaintiff was regressing in the absence of close supervision; therefore, he had no reason to question the veracity of the complaints made against the plaintiff.

In summary, the Court finds that Sergeant Owens' recommendation was made on the basis of his good faith belief that the plaintiff was not competent to perform her duties as a police officer. As noted above, the plaintiff failed to prove that any of the other defendants terminated her because of her race or gender. She did not show that whites or males who were terminated while on probation were treated any differently than she was. She simply failed to prove that she was discriminated against in any way because she was black or a woman.

An appropriate order shall be entered.