[No. C057888. Third Dist. Aug. 13, 2009.]

SARAH ACHENE, Plaintiff and Respondent, v.
PIERCE JOINT UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

**COUNSEL**

Thurbon & McHaney, Erin Elise Holbrook, Robert E. Thurbon and Jacqueline S. McHaney for Defendant and Appellant.

Langenkamp & Curtis, Lesley Beth Curtis and Ted Lindstrom for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This appeal concerns the right of a probationary teacher, charged with unsatisfactory performance during the school year, to a written notice of her deficiencies and an opportunity to correct them prior to a notice of dismissal.

On December 8, 2006, Sarah Achene, a first-year probationary teacher, was notified by defendant Pierce Joint Unified School District that she was to be dismissed for unsatisfactory performance, effective January 10, 2007, pursuant to section 44948.3 of the Education Code.[1]

Although she was informed prior to the notice of dismissal that her performance could be "refine[d]," she was not told that it was unsatisfactory or that a failure to improve her performance warranted dismissal. Achene appealed the notice of dismissal to the district's governing board which affirmed it. She sought relief in the trial court by writ of administrative mandamus. (Code Civ. Proc., § 1094.5.)

The trial court found the district failed to comply with the procedures set forth in sections 44948.3, 44664, and 44938, and concluded that the board's order dismissing Achene was null and void. It directed the district to restore Achene's lost wages and benefits from January 10, 2007, through the end of the 2006–2007 school year.[2] We agree.

Dismissal of probationary employees during the school year is governed by section 44948.3. It provides for two notices, a notice of dismissal which provides time for an appeal to the board, and a notice of unsatisfactory performance preceding the notice of dismissal. In the latter case "unsatisfactory performance [is] determined pursuant to Article 11 (commencing with Section 44660) of Chapter 3, or for cause pursuant to Section 44932." Although section 44948.3 does not say how a cause listed in section 44932 is to be determined, section 44938 provides a procedure applicable to two of the causes, including, since 1995, unsatisfactory performance. (Stats. 1995, ch. 392, § 4, p. 2330.)

Accordingly, section 44948.3 requires application of the section 44938 procedure to dismissal for unsatisfactory performance in addition to the procedure specified in title 1, part 25, chapter 3, article 11, of the Education

---

[1] A reference to a code section is to the Education Code unless otherwise specified.

[2] On April 2, 2007, the district notified Achene in writing that should the board's decision be overturned, it had decided not to reelect her to her position for the 2007–2008 school year pursuant to section 44929.21, subdivision (b). Achene is challenging that decision in a separate action.

Code. Section 44938 requires that a teacher be given written notice identifying particular instances of unsatisfactory performance 90 days prior to a notice of dismissal and gives the teacher that period of time to correct the specified deficiencies.

Although section 44948.3 contains two procedures by which to determine unsatisfactory performance, we are directed to give them a construction "as will give effect to all." (Code Civ. Proc., § 1858.) Since the procedures provided by section 44938 and article 11 of Education Code, title 1, part 25, chapter 3, are entirely consistent, utilize the same evaluation procedures,[3] and authorize dismissal only where particularized instances of unsatisfactory performance are not timely corrected, we apply them both.

Since Achene was not given a timely written notice of unsatisfactory performance or an opportunity to correct the specified deficiencies, as required by sections 44948.3, 44664 and 44938, we shall affirm the judgment.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts in the light most favorable to the judgment. (*Pasadena Unified Sch. Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 313–314 [142 Cal.Rptr. 439, 572 P.2d 53]; *California Teachers Assn. v. Governing Board* (1983) 144 Cal.App.3d 27, 37 [192 Cal.Rptr. 358].)

In August 2006, roughly two months after receiving her provisional teaching credential, Achene was hired by the district to teach English at Pierce High School for the 2006–2007 school year. She has a bachelor's degree in cultural anthropology and a master's degree in information and communication studies.

Robert Chaplin, the head of the school's English department, was assigned to mentor Achene. As a mentor, his job was not "to criticize but . . . rather [to] coach and deal with situations that come up." He and Achene primarily

---

[3] Section 44938, as with section 44948.3, requires application of the evaluation procedures established pursuant to article 11 of Education Code title 1, part 25, chapter 3. Article 11 provides for a uniform system of evaluation of a teacher's performance. It requires that the teacher be given a notice "in writing" prior to the notice of dismissal which "describe[s] the unsatisfactory performance" and directs the employing authority to confer with the teacher and make recommendations for improvement. (§ 44664, subd. (b).)

[4] Because we affirm the judgment on these grounds, we need not consider the district's remaining contention that the trial court erred in finding that Achene was denied a fair hearing. Nor do we consider Achene's claims, made below but not raised on appeal, that she was the subject of anti-Semitism by the placement of Nazi symbols and the word Jew either inside of, or in the entryway to, her classroom.

discussed organizational issues, such as how to organize a lesson so that it will be effective. Chaplin observed Achene in the classroom one time and described her teaching as "[p]retty good. . . . I wouldn't say perfect," which is typical for a first-year teacher.

The school's principal, Doug Kaelin, was responsible for formally evaluating Achene's performance during her first-year probationary period. He performed informal, five-minute walk-throughs of Achene's classroom on a weekly or biweekly basis and discussed his observations with Achene. The substance of those discussions is not set forth in the record.

Kaelin also performed two formal classroom observations. The first took place on October 19, 2006. After the observation, Kaelin met with Achene to discuss the class. At no point during that discussion did Kaelin tell Achene that her performance was unsatisfactory. He emphasized the importance of putting together simple classroom rules and procedures and provided Achene with "two or three papers that had different rules on them . . . ." Achene discussed the rules with Chaplin that evening, and over the weekend, created a list of rules on a poster board, which she reviewed with her students and hung in her classroom.

After the meeting, Kaelin prepared a one and one-quarter page written report, which he provided to Achene on October 31, 2006. The first half of the report discussed Achene's performance as it related to three California Standards for the Teaching Profession.[5] Under "Standard One: Engages and Supports All Students in Learning," Kaelin noted that Achene used "direct instruction" to guide students through a story, and that students were required to work in pairs, taking turns reading the story and sharing their findings. Under "Standard Two: Creating and Maintaining Effective Environment [sic] for Student Learning," Kaelin observed that Achene attempted to maintain an effective learning environment by asking students to raise their hands, requiring them to sit in their seats, and posting classroom rules. Under "Standard Three: Understanding and Organizing Subject Matter for Student Learning," Kaelin noted that the lesson was directly connected to previous lessons, and that students "knew the organization of highlighting characters with different colors." The report did not discuss standard four.

---

[5] Governing boards are required to "establish a uniform system of evaluation and assessment of the performance of all certificated personnel . . . ." (§ 44660.) The guidelines may include "any objective standards from the California Standards for the Teaching Profession if the standards to be included are consistent with this article." (§ 44661.5.) That appears to be what the district's governing board did here.

The second half of the report contained Achene's "reflections," Kaelin's "enforcement [sic]," and areas of "refinement." Achene was pleased with many aspects of the lesson. She felt the "students progressed in meeting the objective of the lesson" and followed her instructions, creating a positive learning environment. She felt, however, that the organization of the lesson and her pacing could improve. For "enforcement [sic]," Kaelin stated that Achene created a "pleasant feeling tone" by using humor and sharing personal experiences, which fostered a sense of community and created an atmosphere where students felt "safe to learn." As for "refinement," Kaelin indicated that "[t]he organization of the lesson allowed for several minutes of down time that tended to allow the students time to get off task." He also observed that Achene needed "to be consistent with direction and rules," noting that although she asked students to raise their hands, they "just start[ed] answering."[6] He concluded the report by stating that it was important for Achene to "continue to work on classroom management, lesson organization, including objective, pacing of the lesson and personal control of emotion in the classroom" before the next formal observation. The report following the October 19 observation was attached to the statement of charges of December 8, 2006.

Achene viewed Kaelin's assessment as "satisfactory" and concluded that she needed to work on pacing (the speed at which a lesson is delivered) and controlling her emotions. She did not understand that he considered her performance unsatisfactory.

The second formal classroom observation took place on November 30, 2006, and was part of Achene's performance evaluation. After the observation Kaelin met with Achene to discuss the class. Kaelin observed that some of the students were "off task" and that a student had left during the class. Achene explained that the student told her he needed to get something from another room. Kaelin also said that Achene "should have been giving [the students] short paragraphs to read with questions that they could answer to practice for" the exit exam, which some of her 12th grade students had yet to pass. At that point, Achene stated, "This feels pretty negative. Am I in trouble

---

[6] The "refinement" portion of the report stated, in its entirety: "For refinement we discussed several areas. The organization of the lesson allowed for several minutes of down time that tended to allow the students time to get off task. Miss Achene would have one student read at a time, which disengaged other students. This creates a lack of [a]ctive [p]articipation by all students. We also discussed the need for the teacher to be consistent with direction and rules. Miss Achene would ask students to stop and think, and to raise their hands when she asked for answers. However when she asked for the answers students would just start answering. At the end of the lesson Miss Achene asked students to take out their agenda to write homework assignments. Six out of 17 students followed her directions."

here?" Kaelin responded by telling Achene that the board had discussed terminating her "effective January." Achene was "shocked" and asked "what the reasons were." Kaelin said that the board's president, Abel Gomez, "felt that his daughter[, who was a student in one of Achene's classes,] had not learn[ed] anything during the whole semester." He also stated that her "academics for [her] seniors [were not] high enough." He explained that if the board decided to terminate her, she "could resign and that . . . [they] could make up a reason, like maybe the commute was too much . . . ."

After the meeting, Kaelin prepared a one-page written report, which he provided to Achene on December 5, 2006. The first half of the report discussed Achene's performance as it related to two California Standards for the Teaching Profession. Under "Standard One: Engages and Supports All Students in Learning," Kaelin noted that the lesson was "student driven" in that students worked independently while Achene walked around the room checking on their progress, asking how they were doing, and attempting to keep them on task. Under "Standard Two: Creating and Maintaining Effective Environment [*sic*] for Student Learning," Kaelin noted that students entered the room in an orderly fashion and took their seats. One student immediately asked to leave class to retrieve a paper from his locker. When he returned 15 minutes later, Achene did not question him concerning his whereabouts. As Achene walked around the room, some students remained on task, while others poked each other with pencils, threw paper, and made rude comments about the assignment. The report did not discuss standards three or four.

The second half of the report contained Achene's "reflections," Kaelin's "reinforcement," and areas of "refinement." Overall, Achene was pleased with the lesson. She felt most students completed it and were pleased with their work. Next time, however, she would teach the lesson in one period. For reinforcement, Kaelin noted that Achene created a "pleasant feeling tone" by using humor and celebrating students' efforts at the end of class. As for refinement, Kaelin agreed with Achene that the lesson could have been taught in one period instead of two. He also suggested the lesson was not challenging enough, allowing students to spend too much time "off task." Finally, he indicated that Achene needed to develop "total awareness of her classroom," such that when she is working with one student she can "sense the behavior and action [*sic*] of other students . . . ."

On December 8, 2006, eight days after Kaelin conducted the second formal classroom observation and three days after he provided Achene with his written report concerning the same, the district notified Achene in writing that she was being dismissed effective January 10, 2007. The notice stated that

"the basis for your dismissal is for unsatisfactory performance and is supported by your evaluation," a copy of which was attached to the notice. Achene was not given a copy of the evaluation prior to receiving the notice of dismissal. The notice summarized the "conduct upon which the discipline [wa]s based." The conduct cited in the notice was the same conduct described in Kaelin's observation reports of October 19, and November 30, 2006, copies of which were attached to the evaluation.

The evaluation form was completed by Kaelin. Although the form listed all six California Standards for the Teaching Profession, Kaelin rated Achene's performance for only parts of three of the standards, and in each case found her performance unsatisfactory. With respect to "Standard I—Engaging and Supporting All Students in Learning," he noted that "[d]uring class observations students were not engaged and [were] off task the majority of the time" and cited his postobservation reports. With respect to "Standard II—Creating and Maintaining Effective Environments for Student Learning," he noted there was "[n]o evidence of the consistence [*sic*] use of rules and routines being enforced in the classroom. Lesson [*sic*] that have been observed do not use instructional time effectively. Students are routinely off task. The organization of lessons lack[s] structure and pacing." He again referred to his postobservation reports. With respect to "Standard IV—Planning Instruction and Designing Learning Experiences for All Students," which had not been addressed in the observations, Kaelin noted that Achene's "ability to articulate the lesson objective to her students has been unclear," noting that students asked one another or the classroom aide "for clarification of what they [were] doing in class." Kaelin also found "no evidence" that Achene had established "short and long term learning goals . . . ." Standard three, which was a subject of the charges and was addressed in the observation of October 19, was not addressed in the evaluation.

Achene timely requested a hearing before the district's governing board. A hearing was held on March 5, 2007. The district's counsel, Erin Holbrook, presided over the hearing. The board found against Achene and ordered that she be dismissed from her position. The order was signed by the board's president, Abel Gomez.

This appeal followed.

## DISCUSSION

We begin with the appropriate standard of review. Where a fundamental vested right is at stake, the trial court is required to exercise its independent judgment on the evidence from the administrative hearing. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].) We review the

record to determine whether the trial court's judgment is supported by substantial evidence (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218 [130 Cal.Rptr.2d 564]). Questions of law are subject to a de novo standard of review. (*Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132–133 [115 Cal.Rptr.2d 294].)

Probationary employees may not be dismissed during the school year except for cause or unsatisfactory performance. (§ 44948.3; see also *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 917 [129 Cal.Rptr.2d 811, 62 P.3d 54].) For that reason Achene had a fundamental vested interest in continuing her employment through the end of the 2006–2007 school year. Accordingly, we shall review the trial court's factual findings for substantial evidence.

I

Section 44938 Applies to Probationary Teachers

The district contends the trial court erred in concluding that the 90-day written notice of unsatisfactory performance, required by section 44938, subdivision (b)(1), prior to the notice of dismissal, applies to probationary employees and therefore it was not required to provide Achene with such a notice.[7] We disagree.

The premise of the district's argument is that section 44938 applies only to permanent employees. That is not the case. First, it does not say so. It applies to "any charges" of conduct specified therein. Second, section 44938 is part of title 1, part 25, chapter 3, article 11, of the Education Code. Whenever in the article a section applies to permanent employees it says so. Thus, section 44934 provides a procedure applicable solely to the dismissal of permanent employees for a cause specified in section 44932. By contrast, although section 44932 says it is applicable to permanent employees, it is

---

[7] Section 44938 provides in pertinent part that "[t]he governing board of any school district shall not act upon *any* charges of unsatisfactory performance unless it acts in accordance with the provisions of paragraph (1) or (2):

"(1) At least 90 calendar days prior to the date of the filing, the board . . . has given the employee against whom the charge is filed, written notice of the unsatisfactory performance, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for the charge. The written notice shall include the evaluation made pursuant to Article 11 (commencing with Section 44660) of Chapter 3, if applicable to the employee." (§ 44938, subd. (b), italics added.)

Section 44938, subdivision (b)(2) addresses actions by the board during the last quarter of the school year. Here, the board acted prior to the last quarter of the school year; thus, that subdivision does not apply.

made applicable to probationary employees by section 44948.3.[8] It thus applies to both permanent and probationary employees.

Section 44948.3 incorporates the causes specified in section 44932 as grounds for dismissal. "(a) . . . [P]robationary employees may be dismissed during the school year for unsatisfactory performance determined pursuant to Article 11 (commencing with Section 44660) of Chapter 3, *or for cause [determined] pursuant to Section 44932.*" (Italics added.)

■ In incorporating section 44932, section 44948.3 also incorporated the procedures made applicable by section 44938 to two of the causes listed in section 44932. In 1983 the causes were unprofessional conduct and incompetency. (Former § 44938; Stats. 1983, ch. 498, § 57, p. 2085.)[9] (See *Governing Board v. Commission on Professional Competence* (1985) 171 Cal.App.3d 324 [217 Cal.Rptr. 457].) In 1995 "unsatisfactory performance" was substituted for "incompetency" in both sections 44932 and 44938. (Stats. 1995, ch. 392, §§ 2, 4, pp. 2329, 2330.)[10] Consequently, section 44938, subdivision (b)(1), specifies the procedure applicable to the dismissal during the school year of a probationary employee for unsatisfactory performance.

As noted (see *ante*, fn. 7) section 44938 requires that at least 90 days prior to a notice of dismissal of a probationary employee for unsatisfactory performance, the governing board of a school district give written notice particularizing the performance and providing the employee with an opportunity to correct his or her deficiencies.

■ The anomaly of two procedures for notice prior to the notice of dismissal for unsatisfactory performance is more apparent than real. First, the procedures are identical in that each incorporates the evaluation procedure of Education Code title 1, part 25, chapter 3, article 11. (§§ 44948.3, 44938.) Second, they differ only in the specificity required of the notice. ■ Last,

---

[8] Section 44948.3 was enacted in 1983 along with amendments to allied provisions of the Education Code to expressly govern the dismissal during the school year of probationary employees. (Stats. 1983, ch. 498, p. 2031.) It provides in relevant part that: "(a) First and second year probationary employees may be dismissed during the school year for unsatisfactory performance determined pursuant to Article 11 (commencing with Section 44660) of Chapter 3, or for cause pursuant to Section 44932." Title 1, part 25, chapter 3, article 11, of the Education Code incorporates the procedures for dismissal of section 44664.

[9] In 1983 former section 44938 provided in subdivision (c): " 'Incompetency' as used in this section means, and refers only to, the incompetency particularly specified as a cause for dismissal in Section 44932 . . . ." " 'Unprofessional conduct' as used in this section means, and refers to, the unprofessional conduct particularly specified as a cause for dismissal or suspension in Sections 44932 and 44933 . . . ."

[10] Section 44938 provides that each such cause is the same as "[P]articularly specified as a cause for dismissal . . . in Section[] 44932 . . . ."

we are directed to give them a construction "as will give effect to all." (Code Civ. Proc., § 1858.)[11] Accordingly, we apply them both.

## II

### Notice of Unsatisfactory Performance and Opportunity to Correct Deficiencies

The district next contends that the trial court "erred when it ruled that the district did not confer with Achene and give her an opportunity to correct her unsatisfactory performance pursuant to . . . section 44664." We disagree.

■ As previously discussed, Achene was dismissed pursuant to section 44948.3, which requires that "[i]n the event of a dismissal for unsatisfactory performance, a copy of the evaluation conducted pursuant to Section 44664 shall accompany the written notice [of dismissal]." (*Id.*, subd. (a)(1).) The logical consequence of this provision is that a district must conduct an evaluation in accordance with section 44664 *before* it can dismiss a probationary employee for unsatisfactory performance during the school year. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672] ■ [In determining legislative intent, a court looks first to the language of the statute, giving effect to its plain meaning.].) The district does not assert otherwise. Rather, it contends it complied with the requirements of section 44664.

■ Section 44664 requires that the performance of each certificated probationary employee be evaluated and assessed at least once each school year. (§ 44664, subd. (a)(1).) The evaluation must be conducted pursuant to "objective evaluation and assessment guidelines" (§ 44660) which comply with the standards set forth in section 44662.

■ "The evaluation shall include recommendations, if necessary, as to areas of improvement in the performance of the employee. *If an employee is not performing his or her duties in a satisfactory manner according to the standards prescribed by the governing board, the employing authority shall notify the employee in writing of that fact and describe the unsatisfactory performance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of improvement in the employee's performance and endeavor to assist the employee in his or her*

---

[11] In any event the " 'later enactment . . . prevail[s] over an earlier, conflicting enactment of the same legal status in respects the conflict.' " (*California Correctional Peace Officers Assn. v. Department of Corrections* (1999) 72 Cal.App.4th 1331, 1339 [85 Cal.Rptr.2d 797], quoting *American Lung Assn. v. Wilson* (1996) 51 Cal.App.4th 743, 752 [59 Cal.Rptr.2d 428] (conc. opn. of Blease, Acting P. J., with Scotland, J., concurring).)

*performance.*" (§ 44664, subd. (b), italics added.) By including the italicized language, the Legislature plainly intended that an employee who is not performing in a satisfactory manner be notified of that fact and *thereafter* counseled concerning the perceived deficiencies in her performance and be given an opportunity to correct them.

Here, while the evaluation notified Achene that her performance was unsatisfactory, the district did not give her the evaluation until it notified her she was being dismissed. The district does not contend that it complied with section 44664 by providing Achene with the evaluation; rather, it asserts that it substantially complied with the requirements of section 44664, citing Kaelin's October 19 and November 30, 2006, classroom observations, postobservation meetings with Achene, and postobservation reports. The district also notes that it assigned Achene a mentor at the beginning of the year who "counseled and assisted her . . . ."

In *Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703, 710–711, 716–717 [157 Cal.Rptr. 72, 597 P.2d 475] (*Miller*), the Supreme Court found that a school board substantially complied with section 44664, before reassigning a principal to a teaching position, even though the employee's final evaluation, performed in 1975, did not expressly state that he was not performing his duties in a satisfactory manner. The court reasoned that: "Although plaintiff received generally satisfactory evaluations in 1973 and 1974, the board's evaluation report in 1974 contains suggestions for specific areas of improvement.[12] The board's establishment of a 'timetable' in April 1975 for assessment of plaintiff's performance evidences an increased scrutiny of plaintiff that year; Associate Superintendent Cloud notified plaintiff at that point that plaintiff was the subject of concern, and repeated suggestions for improvement.[13] [¶] Plaintiff's final . . . evaluation in June 1975 plainly notified plaintiff 'in writing' of any unsatisfactory conduct on his part, and in addition provided a forum for plaintiff's supervisors to make 'specific recommendations as to areas of improvement in the employee's performance and endeavor to assist him in such performance.'[14] . . . Throughout the [1975–1976 school] year . . . plaintiff's supervisors had contacted him frequently concerning his difficulties; after at least two meetings Associate Superintendent Cloud provided plaintiff with memoranda listing methods of

---

[12] The evaluation suggested that " 'you personally become more involved in curriculum matters' " and " '[w]ork with your leadership team and the staff to develop strategies for a better 2-way communications system . . . .' " (*Miller, supra,* 24 Cal.3d at p. 708, fn. 4.)

[13] "Dr. Cloud pointed out plaintiff's 'Need to assist newer teachers in establishing a wholesome learning climate in the classroom'; 'Need to provide inspired leadership that challenges people to do their best'; 'Need to spend more time in the district rather than at outside conferences.' " (*Miller, supra,* 24 Cal.3d at p. 708, fn. 5.)

[14] The 1975 evaluation "referred to specific criticisms previously documented to emphasize 'that improvement is needed at the principalship level.' " (*Miller, supra,* 24 Cal.3d at p. 708.)

improvement. Thus plaintiff knew of the board's close attention to his performance and of specific ways in which he could alleviate their concerns. Under these circumstances we reject the trial court's finding of noncompliance and its overly restrictive interpretation of the requirements of section 44664." (*Miller, supra*, 24 Cal.3d at p. 717, fn. omitted.)

The facts of that case stand in sharp contrast to what occurred here. Following the October 19, 2006, classroom observation, Kaelin told Achene about the importance of putting together simple classroom rules and procedures and provided Achene with some examples. He provided her with a written report, which contained many positive comments, including that Achene used "direct instruction" to guide students through a story; attempted to maintain an effective learning environment by asking students to raise their hands, requiring them to sit in their seats, and posting classroom rules; and directly connected the lesson to previous lessons. Kaelin also praised Achene for using humor and personal experiences in her teaching and creating an atmosphere where students felt "safe to learn." In a section labeled "refinement," Kaelin said that "[t]he organization of the lesson allowed for several minutes of down time that tended to allow the students time to get off task." He also noted that Achene needed "to be consistent with direction and rules." Kaelin concluded the report by stating that it was important for Achene to "continue to work on classroom management, lesson organization, including objective, pacing of the lesson and personal control of emotion in the classroom."

Achene viewed Kaelin's assessment as satisfactory and concluded that she needed to work on pacing and controlling her emotions. She did not understand that he considered her performance unsatisfactory. The trial court agreed with her interpretation, noting that nothing in that report notified Achene that her performance was unsatisfactory or that she would be dismissed if she did not make the recommended refinements.

Substantial evidence supports the trial court's determination. Telling an employee that she needs to refine her performance is a far cry from telling her that her performance is unsatisfactory. To refine is "to become pure or perfected . . . to make improvement by introducing subtleties or distinctions." (Merriam-Webster's Collegiate Dict. (10th ed. 2000) p. 979.) Telling an employee that her performance needs refinement assumes a level of satisfactory performance, and, as Achene pointed out, one would expect that a first-year teacher would be given areas for refinement. There is ample evidence to support the trial court's finding that nothing in Kaelin's postobservation discussion with Achene or his report notified Achene that her performance was unsatisfactory. Accordingly, the district cannot be said to

have substantially complied with section 44664 by virtue of the October 19, 2006, classroom observation, postobservation discussion, or postobservation report.

The district's reliance on Kaelin's November 30, 2006, classroom observation, postobservation discussion, and postobservation report is also misplaced. While Kaelin did notify Achene that there were serious concerns about her performance following that observation, she was not given sufficient time to improve her performance as contemplated by section 44664. The observation took place less that one week before Achene was provided with the notice of dismissal, and the concerns were not embodied in a writing and given to Achene until December 5, 2006, just three days before she was given the notice of dismissal.

█ As the district correctly notes, neither section 44664 nor 44948.3 sets forth any "specific . . . period of time to correct the unsatisfactory performance . . . ." Section 44664, however, plainly contemplates that there be some period of time in which to do so. It provides first that the district shall notify the employee in writing of and describe the unsatisfactory performance. (§ 44664, subd. (b).) "The employing authority shall thereafter confer with the employee making specific recommendations as to areas of improvement in the employee's performance and endeavor to assist the employee in his or her performance." (*Ibid.*) In this case the district made no effort to make recommendations and assist Achene after delivery of the written report on December 5, 2006. We need not determine the outer boundaries of a reasonable amount of time because one week was in any case unreasonable and the district utterly failed to comply with the 90-day requirement of section 44938.

Finally, providing Achene, a first-year teacher, with a mentor, does not constitute substantial compliance with section 44664. Significantly, there is no evidence that Chaplin ever advised Achene that her performance was unsatisfactory. To the contrary, he described her teaching as "pretty good," and it was not his job to criticize her performance.

█ The trial court's finding that the district failed to notify Achene that her performance was unsatisfactory or work with her to improve it, as required by sections 44948.3, 44938 and 44664, is supported by substantial evidence. Accordingly, the district's order dismissing her during the school year for unsatisfactory performance is void. (See *Tarquin v. Commission on Professional Competence* (1978) 84 Cal.App.3d 251, 259 [148 Cal.Rptr. 522].)

## DISPOSITION

The judgment is affirmed. Achene shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278 (a)(1).)

Robie, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 19, 2009, S176564. Corrigan, J., was of the opinion that the petition should be granted.